UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAMON FIELDS,

Plaintiff,

– against –

NEW YORK CITY HOUSING AUTHORITY, RUDY MURILLO, ANTHONY LUCIANO, SYLVIA AUDE-MCCULLOUGH, KIMBERLY TAYOR, LATOYA RAMSEUR-DELIOTTE, CAROLYN GIBBS, ROBIN YUDKOVITZ, AMANDA DONOHUE, MARLA EDMONSON, and SHARDA SHRESTHA In his/her/their individual and professional capabilities,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.
1:25-cv-07292 (JAV)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AC**

**BOND, SCHOENECK & KING, PLLC**
Emily E. Iannucci, Esq.
Howard M. Miller, Esq.
*Attorneys for Defendants*

68 South Service Road
Melville, New York 11747
(516) 267-6300

# TABLE OF CONTENTS

Page


PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

STANDARD OF REVIEW ..... 4

ARGUMENT ..... 5

POINT I THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH RULE 8(A)(2) ..... 5

POINT II THERE IS NO PLAUSIBLE FAILURE TO ACCOMMODATE CLAIM ..... 8

POINT III THERE IS NO PLAUSIBLE DISABILITY DISCRIMINATION CLAIM ..... 13

A. The AC Fails to State a Disability Discrimination Claim Under the ADA And/Or RA ..... 14

1. The AC Fails to Sufficiently Allege that Plaintiff Was "Disabled" ..... 15

2. The AC Fails to Sufficiently Allege that Plaintiff Was Qualified to Perform the Essential Functions of His Job ..... 16

3. The AC Fails to Sufficiently Allege that Plaintiff Suffered an Adverse Employment Action Because of His Disability ..... 18

B. The AC Fails to State a Disability Discrimination Claim Under the NYSHRL And/Or the NYCHRL ..... 25

POINT IV THERE IS NO PLAUSIBLE RETALIATION CLAIM ..... 26

A. Plaintiff Fails to Plausibly Allege that He Was Denied Pay And Benefits Because He Engaged in Protected Activity ..... 27

B. Plaintiff Fails to Plausibly Allege that He Was Constructively Demoted Because He Engaged in Protected Activity ..... 29

C. Plaintiff Fails to Plausibly Allege that He Was Denied Training and Equipment Because He Engaged in Protected Activity ..... 29

D. Plaintiff Fails to Plausibly Allege that His Email Account Was Disabled Because He Engaged in Protected Activity ..... 31

E. Plaintiff Fails to Plausibly Allege that He Was Reassigned to Various Worksites Because He Engaged in Protected Activity ... 32

F. Plaintiff Fails to Plausibly Allege that He Received a Counseling Memorandum on December 21, 2022 Because He Engaged in Protected Activity ... 32

G. Plaintiff Fails to Plausibly Allege that He Received a Negative Performance Evaluation on January 3, 2023 Because He Engaged in Protected Activity ... 35

H. Plaintiff Fails to Plausibly Allege that He Was Terminated Because He Engaged in Protected Activity ... 36

I. Plaintiff Fails to Plausibly Allege that He Was "Blacklisted" Because He Engaged in Protected Activity ... 37

POINT V THERE IS NO PLAUSIBLE HOSTILE WORK ENVIRONMENT CLAIM ... 39

POINT VI THERE IS NO PLAUSIBLE INTERFERENCE CLAIM ... 41

POINT VII THERE IS NO PLAUSIBLE AIDING AND ABETTING CLAIM ... 42

A. The AC Fails to State an Aiding and Abetting Claim Under the NYSHRL And/Or the NYCHRL ... 43

B. Plaintiff's Aiding and Abetting Claims Must Also Be Dismissed Because Plaintiffs' Discrimination and Retaliation Claims Are Based on The Individual Defendants' Own Conduct ... 44

POINT VIII THE COMPLAINT FAILS TO STATE A CLAIM FOR EMPLOYER LIABILITY UNDER THE NYCHRL ... 44

POINT IX THE STATE AND LOCAL LAW CLAIMS SHOULD BE DISMISSED ... 45

POINT X THE AC FAILS TO PLAUSIBLY STATE A CLAIM UNDER THE RA ... 47

POINT XI THERE IS NO BASIS FOR AWARDING PUNITIVE DAMAGES ... 47

CONCLUSION ... 48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramov v. Northwell Health Sys.*,
2024 U.S. Dist. LEXIS 172589, at *9 (E.D.N.Y. 2024) ....16

*Adkins v. Briggs & Stratton Corporation*,
159 F.3d 306 (7th Cir. 1998) ....23

*Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D, AFL-CIO v. Tightseal Constr., Inc.*,
No. 17 Civ. 3671, 2018 U.S. Dist. LEXIS 138041, . . . at *12 (S.D.N.Y. Aug. 14, 2018) ....5

*Arazi v. Cohen Brothers Realty Corp.*,
2022 U.S. Dist. LEXIS 56549, 2022 WL 912940, at *6 (S.D.N.Y. 2022) ....9

*Ashcroft v. Iqbal*,
556 U.S. 662, 678, 679 (2009) ....4, 30

*Atherley v. N.Y.C. Dept. of Educ.*,
2024 U.S. Dist. LEXIS 58227, at *15, *30 (S.D.N.Y. 2024) ....14, 26

*Balchan v. New York City Hous. Auth.*,
2025 U.S. Dist. LEXIS 32836, *35 (S.D.N.Y. 2025) ....27

*Bardi v. Warren Cty. Sheriff's Dept.*,
194 A.D.2d 21, 23-24 (3d Dep't 1993) ....46

*Barton v. Warren County*,
2020 U.S. Dist. LEXIS 141128, 2020 WL 4569465, at *10 (N.D.N.Y. 2020) ....40

*Bautista v. PR Gramercy Square Condominium*,
642 F. Supp. 3d 411, 427 (S.D.N.Y. 2022) ....40

*Bell Atlantic Corp. v.* Twombly,
550 U.S. 544, 570 (2007) ....4

*Bell v. Jendell*,
980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) ....5

*Bell v. N.Y.C. Dep't of Educ.*,
2025 U.S. Dist. LEXIS 146518, at *48 (S.D.N.Y. 2025) ....39

*Blair v. L.I. Child & Family Dev. Servs*,
2017 U.S. Dist LEXIS 14177, at *37, *38 (E.D.N.Y. 2017) ....10, 13

*Blakely v. Wells*,
209 Fed. App'x 18, 19 (2d Cir. 2006)........8

*Blazina v. Port. Auth.*,
2008 U.S. Dist. LEXIS 30605, *22 (S.D.N.Y. 2008)........48

*Blodgett v. 22 S. St. Operations, LLC*,
828 Fed. App'x 1, 3-4 (2d Cir. 2020)........12

*Brooks v. 1st Precinct Police Dept.*,
2014 WL 1875037, at *2 (E.D.N.Y. 2014)........8

*Brown v. UPS*,
2022 U.S. Dist. LEXIS 159872, at *6 (N.D.N.Y. 2022)........9

*Burgess v. New Sch. Univ.*,
2024 U.S. Dist. LEXIS 163306, at *28 (S.D.N.Y. 2024)........34

*C.C. v. Google, LLC*,
2025 U.S. Dist. LEXIS 13448, *24-25 (S.D.N.Y. 2025)........27

*Cangro v. N.Y.C. Dep't of Education*,
2024 U.S. Dist. LEXIS 148244 (S.D.N.Y. 2024)........10

*Cangro v. N.Y.C. Dep't of Finance,*
2024 U.S. Dist. LEXIS 148244, at *21 (S.D.N.Y. 2024)........12

*Charles v. City of New York*,
2023 WL 2752123, at *11 (S.D.N.Y. 2023)........44

*Chauca v. Abraham*,
30 N.Y.3d 325, 328-29 (2017)........47

*Chin v. New York City Housing Department*,
106 A.D.3d 443, 445 (1st Dep't 2013)........41

*Christopher v. Laidlaw Transit Inc.*,
899 F. Supp. 1224, 1227 (S.D.N.Y. 1995)........10

*Citadel Estates, LLC v. New York City Hous. Auth.*,
39 Misc. 3d 880, 893 (Sup. Ct. Kings Cty. 2013)........46

*Clark v. Coca-Cola Bevs. Northeast, Inc.*,
2022 U.S. App. LEXIS 657 at *8 (2d Cir. 2022)........17

*Colleta v. Northwell Health*,
2019 U.S. Dist. LEXIS 141338, at *19 (E.D.N.Y. 2019)........42

*Colliton v. Cravath, Swaine & Moore LLP*,
2008 U.S. Dist. LEXIS 74388, at *19 (S.D.N.Y. 2008) ........................................................5, 8

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42, 47 (2d Cir. 1991)...........................................................................................4, 10

*Crawford v. Bronx Cmty. Coll.*,
2024 U.S. Dist. LEXIS 12068, at *33-35 (S.D.N.Y. 2024)....................................................25

*Crawford v. Bronx Cmty. Coll.*,
2024 U.S. Dist. LEXIS 152068, at *25 (S.D.N.Y. 2024) .......................................................14

*De Jesus v. Sears, Roebuck & Co., Inc.*,
87 F.3d 65, 70 (2d Cir. 1996).....................................................................................................5

*Dechberry v. New York City Fire Dept.*,
124 F. Supp. 3d 131, 152, 153, 154 (E.D.N.Y. 2015) ...........................................15, 17, 27, 36

*Dixon v. City of New York*,
2025 U.S. Dist. LEXIS 3297, at *31-21, *34 (S.D.N.Y. 2025)........................................25, 26

*Dominguez v. Bd. of Educ. of the Yonkers City Sch. Dist.*,
2024 U.S. Dist. LEXIS 124851, at *10 (S.D.N.Y. 2024) .......................................................15

*Dorrell v. N.Y.C. Hous. Auth.*,
2022 N.Y. Misc. LEXIS 18654, at *4-5 (Sup. Ct. Queens Cty. 2022)...................................46

*Douglas v. Long Island Jewish Med. Ctr.*,
2010 U.S. Dist. LEXIS 77464, at *8 (E.D.N.Y. 2010)...........................................................10

*Dozier v. Deutsche Bank Trust Co. Ams.*,
2011 U.S. Dist. LEXIS 100467, at *2 (S.D.N.Y. 2011) ...........................................................5

*Duff v. Pristine Services, Inc.*,
2021 WL 66391, at *9 (S.D.N.Y. 2021).............................................................................. *passim*

*Earl v. Good Samaritan Hosp. of Suffern NY*,
625 F. Supp. 3d 292, 303-06 (S.D.N.Y. 2022) .......................................................................16

*EEOC v. Day & Zimmermann NPS, Inc.*,
265 F. Supp. 3d 179, 204 (D. Conn. 2017)..............................................................................42

*Fairbrother v. Morrison*,
412 F.3d 39, 6-57 (2d Cir. 2005) ............................................................................................36

*Farmer v. Shake Shack Enters., LLC*,
473 F. Supp. 3d 309, 338 (S.D.N.Y. 2020)..............................................................................43

*Florentino v. Nokit Realty Corp.*,
2010 N.Y. Misc. LEXIS 2310, *17-19 (Sup Ct. New York Cty. 2010)....................................46

*Forrest v. N.Y.C. Hous. Auth.*,
2023 U.S. Dist. LEXIS 76626, at *9 (S.D.N.Y. 2023)..........................................................34

*Gatling-Brooks v. Liberty Mut. Ins. Co.*,
2024 U.S. Dist. LEXIS 231936, at *5-6 (S.D.N.Y. 2024)........................................................6

*Gomez v. Cablevision Sys. New York City Corp.*,
2016 WL 3455935, at *24 (Sup. Ct. New York Co. 2016) ......................................................44

*Grasso v. Schenectady Cty. Pub. Lib.*,
30 A.D.3d 814, 817-18 (3d Dep't 2006)....................................................................................47

*Greenbaum v. New York City Transit Authority*,
2021 U.S. Dist. LEXIS 119024, 2021 WL 2650509, at *11 (S.D.N.Y. 2021)........................40

*Harris v. N.Y.C. Human Res. Admin.*,
2022 U.S. Dist. LEXIS 139134, at *25, 30-31 (S.D.N.Y. 2022).......................................23, 24

*Harrison v. North Shore Univ. Hosp.*,
2008 U.S. Dist. LEXIS 17330, at *37-38 (E.D.N.Y. 2008) ....................................................38

*Hollington v. CDM Fed. Programs Corp.*,
2023 U.S. Dist. LEXIS 40887. at *27-28 (S.D.N.Y. 2023).....................................................38

*J.B. v. City of New York*,
231 A.D.3d 696, 697 (2d Dep't 2024).........................................................................................45

*J.E. Indus. Of Ossining, Inc. v. Peekskill Hous. Auth.*,
128 A.D.3d 638, 639-40 (2d Dep't 2015)...................................................................................45

*Johnson v. N.Y. Corp.*,
2024 U.S. Dist. LEXIS 159018, at 9-10 (S.D.N.Y. 2024)........................................................6

*Johnson v. New York Presbyterian Hosp.*,
2001 WL 829868, at *15-16 (S.D.N.Y. 2001), *aff'd*, 55 F. App'x 25
(2d Cir. 2003)..........................................................................................................................30, 32

*Jones v. Nat'l Comms. & Surveillance Networks*,
266 F. App'x 31, 33 (2d Cir. 2008) ..............................................................................................6

*Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*,
2012 WL 1638326, at *15 (S.D.N.Y. 2012)..................................................................................8

*Kolivas v. Credit Agricole*,
No. 95 Civ. 5662, 1996 U.S. Dist. LEXIS 17478, 1996 WL 684167, at *3 (S.D.N.Y. 1996), *aff'd*, 125 F.3d 844 (2d Cir. 1997) ....................24

*Lalla v. Consol. Edison Co. of New York, Inc.*,
2001 U.S. Dist. LEXIS 5312, at *3 (S.D.N.Y 2001) ....................11

*Lee v. Saul*,
2020 WL 7029264, at *3 (S.D.N.Y. 2020) ....................13

*Leon v. N.Y.C. Empls. Ret. Sys.*,
240 A.D.2d 186 (1st Dep't 1997) ....................45, 46

*LeRoy v. Delta Air Lines*,
2022 U.S. App. LEXIS 29352 (2d Cir. 2022). ....................45

*Lewis v. New York City Police Dept.*,
908 F. Supp. 2d 213, 327 (E.D.N.Y. 2012), *aff'd sub nom.*, *Lewis v. NYCH Police Dept.*, 537 F. App'x 11 (2d Cir. 2013) ....................17

*Littlejohn v. City of New York*,
795 F.3d 297, 310-11 (2d Cir. 2015) ....................4, 27

*Livingston v. City of New York*,
563 F. Supp. 3d 201, 246 (S.D.N.Y. 2021) ....................26

*Llanos v. City of New York*,
129 A.D.3d 620 (1st Dep't 2015) ....................41

*Luciano v. City of Rochester*,
2010 U.S. Dist. LEXIS 21867, at *12 (W.D.N.Y. 2010) ....................23

*Lyman v. N.Y. Presbyterian Hosp.*,
2014 U.S. Dist. LEXIS 95492, at *17 (S.D.N.Y. 2014) ....................15

*Malena v. Victoria's Secret Direct, LLC*,
886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) ....................44

*Mandavia v. Columbia Univ.*,
912 F. Supp. 2d 119 (S.D.N.Y. 2012) ....................27

*Marcus v. Leviton Manufacturing, Co.*,
661 F. App'x 29, 32 (2d Cir. 2016) ....................4

*Mathirampuzha v. Potter*,
548 F.3d 70, 78 (2d Cir. 2008) ....................32

*McCutcheon v. United States DOI*,
2023 U.S. Dist. LEXIS 40935, at *16 (S.D.N.Y. 2023) ........................................................47

*McDonnell-Douglas Corp. v. Green*,
411 U.S. 792 (1973)........................................................................................................13, 26

*McNamara v. Tourneau, Inc.*,
496 F. Supp. 2d 366, 376 (S.D.N.Y. 2007)...............................................................................13

*Memnon v. Clifford Chance US, LLP*,
667 F. Supp. 2d 334, 343 (S.D.N.Y. 2009)...............................................................................38

*Mendes Da Costa v. Marcucilli*,
675 F, App'x 15, 17 (2d Cir. 2017) .............................................................................................6

*Mercado v. Mount Sinai Beth Israel*,
2023 U.S. Dist. LEXIS 163522, *16, *37 (S.D.N.Y. 2023)............................................27, 40

*Miller v. Buffalo Public Schools*,
2021 U.S. Dist. LEXIS 213940, at *12 (N.D.N.Y. 2021) .......................................................39

*Monterroso v. Sullivan & Cromwell, LLP*,
591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008)...............................................................................39

*Morales v. NYS Dept. of Labor*,
865 F. Supp. 2d 220, 244 (N.D.N.Y. 2012), *aff'd*, 530 F. App'x. 13 (2d Cir. 2013) .............20

*Murray v. United Parcels Serv., Inc.*,
2022 WL 4468295, at *22 (E.D.N.Y. 2022)..............................................................................43

*Murtha v. N.Y. State Gaming Comm'n*,
2019 U.S. Dist. LEXIS 159783, at *35 (S.D.N.Y. 2019) ................................................39, 40

*Natofsky v. City of New York*,
921 F.3d 337, 352 (2d Cir. 2019)...............................................................................................36

*Nieblas-Love v. N.Y.C. Hous. Auth.*,
165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016) ....................................................................................41

*Nobriga v. Dalton*,
1996 WL 294354, at *2 (E.D.N.Y. 1996)...................................................................................47

*O'Hara v. Bd. of Coop. Educ. Servs. S. Westchester*,
2020 U.S. Dist. LEXIS 47210, at *12, *41-42 (S.D.N.Y. 2020)......................................16, 20

*Owens v. New York AG*,
10 Fed. App'x 34, 35 (2d Cir. 2001).............................................................................................8

*Pacenza v. IBM Corp.*,
2009 U.S. Dist. LEXIS 29778, *28-29 (S.D.N.Y. 2009)........................................................24

*Palm Beach Strategic Income, LP v. Salzman*,
2011 WL 1655575, at *16 (E.D.N.Y. 2011), *aff'd*, 457 F. App'x 40 (2d Cir. 2012)................8

*Paul v. Cnty. of Madison*,
2023 U.S. Dist. LEXIS 172401, at *24 (N.D.N.Y. 2023) ........................................................9

*Pierre-Louis v. United States Postal Serv.*,
2025 U.S. Dist. LEXIS 149651, at *24-25, *31, *32-33 (S.D.N.Y. 2025) .................18, 19, 47

*Pocock v. Software in the Pub. Int. Inc.*,
2025 U.S. Dist. Lexis 162686, at *13-14 (S.D.N.Y. 2025) ......................................................8

*Prezzi v. Schelter*,
469 F.2d 691, 692 (2d Cir. 1972)..............................................................................................6

*Puranik v. Children's Place Servs. Co., LLC*,
2025 U.S. Dist. LEXIS 171797, at *10, *11, *37-38, *43 (S.D.N.Y. 2025).........15, 16, 25, 28

*Reid v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY), Inc.*,
2025 U.S. Dist. LEXIS 171659, at *27-28 (E.D.N.Y. 2025) .................................................24

*Rinaldi v. Quality King Distributors, Inc.*,
29 F. Supp. 3d 218, 227 (E.D.N.Y. 2014) ..............................................................................17

*Rochelle v. Autozoners, LLC*,
2023 U.S. Dist. LEXIS 160825, at *16 (S.D.N.Y. 2023)........................................................12

*Rodriguez by Rodriguez v. City of New York*,
197 F.3d 611, 618 (2d Cir. 1999)..............................................................................................9

*Rodriguez v. New York City Hous. Auth.*,
2023 N.Y. Misc. LEXIS 14227, at *6 (Sup. Ct. New York Cty. 2023) .................................46

*Roman v. New York City Hous. Auth.*,
212 A.D.3d 816, 817 (2d Dep't 2023)....................................................................................46

*Ross v. State of New York*,
2016 U.S. Dist. LEXIS 18517, *9 (S.D.N.Y. 2016)...............................................................26

*Rubin v. N.Y.C. Bd. of Educ.*,
2023 U.S. Dist. LEXIS 36082, at *6-7 (S.D.N.Y. 2023)...........................................................6

*Ruiz v. New York City*,
2023 N.Y. Misc. LEXIS 4800, *6 (Sup. Ct. New York Cty. 2023) .......................................48

*Ruotolo v. Fannie Mae*,
933 F. Supp. 2d 512, 527 (S.D.N.Y. 2013)....................45

*Salahuddin v. Cuomo*,
861 F.2d 40, 42 (2d Cir. 1988)....................5

*Salhuddin v. New York City Dept. of Educ.*,
2017 U.S. Dist. LEXIS 138065, at *9 (S.D.N.Y. 2017)....................33

*Samuels v. Urb. Assembly Charter Sch. For Comput. Sci.*,
2024 U.S. Dist. LEXIS 157139, at *31 (S.D.N.Y. 2024)....................43

*Sanchez v. L'Oreal USA, Inc.*,
2022 U.S. Dist. LEXIS 88733, at *5 (S.D.N.Y. 2022)....................43

*Sanders v. New York City Hum. Res. Admin.*,
361 F.3d 749, 755 (2d Cir. 2004)....................18, 31, 32

*Santana v. Mount Vernon City Sch. Dist.*,
2023 U.S. Dist. LEXIS 57090, at **43-44 (S.D.N.Y. 2023)....................41

*Saudagar v. Walgreen Co.*,
2019 WL 498349, at *3 (S.D.N.Y. Feb. 8, 2019)....................4

*Schulz v. Commack Union Free Sch. Dist.*,
2023 WL 2667050, at *8 (E.D.N.Y. 2023)....................30

*Seville Constr., Inc. v. New York City Hous. Auth.*,
247 A.D.2d 69 (1st Dep't 1998)....................48

*Singhal v. Doughnut Plant, Inc.*,
2022 WL 976885, at *5 (S.D.N.Y. 2022)....................44

*Slattery v. Swiss Reinsurance Am. Corp.*,
248 F.3d 87, 95 (2d Cir. 2001)....................34, 35, 37

*Spaulding v. New York City Dept. of Educ.*,
2015 WL 12645530, at *40 (E.D.N.Y. 2015)....................19

*Stevens v. Rite Aid Corp.*,
851 F.3d 224, 227 (2d Cir. 2017)....................17

*Stickler v. IBM, Inc.*,
2024 U.S. Dist. LEXIS 154797, at *11 (S.D.N.Y. 2024)....................29

*Stinnett v. Delta Air Lines, Inc.*,
2019 WL 1493224, at *9 (E.D.N.Y. 2019), *aff'd*, 803 F. App'x 505 (2d Cir. 2020)....................43

*Stone v. City of Mount Vernon*,
118 F.3d 92, 97 (2d Cir. 1997)....17

*Strife v. Aldine Indep. Sch. Dist.*,
138 F.4th 237, 252 (5th Cir. 2025)....42

*Terry v. Ashcroft*,
336 F.3d 128, 138 (2d Cir. 2003)....18

*Tiu-Malabanan v. Univ. of Rochester*,
2008 WL 788637, *15-19 (W.D.N.Y. 2008)....30

*Torres v. United States VA*,
2004 U.S. Dist. LEXIS 5363 (S.D.N.Y. 2004)....47

*Truitt v. Salisbury Bank & Tr. Co.*,
52 F.4th 80, 86-87 (2d Cir. 2022)....14

*Udoh v. N.Y.C. Dep't of Probation*,
2025 U.S. Dist. LEXIS 148391, at *18 (S.D.N.Y. 2025)....9

*Valensi v. Park Ave. Operating Co.*,
169 A.D.3d 960, 962 (2d Dep't 2019)....48

*Vega v. Hempstead Union Free School District*,
801 F.3d 72, 87 (2d Cir. 2015)....4

*Veras v. N.Y.C. Dept. of Educ.*,
2024 U.S. Dist. LEXIS 126175, at *10 (S.D.N.Y. 2024)....20

*Walker v. City of New York*,
2013 U.S. Dist. LEXIS 35816, at *11 (E.D.N.Y. 2013)....38

*Wallace v. New York City Dept. of Corr.*,
1996 U.S. Dist. LEXIS 22368, at *2 (E.D.N.Y. 1996)....5

*Wein v. N.Y.C. Dept. of Educ.*,
2020 U.S. Dist. LEXIS 150136, at *13 (S.D.N.Y. 2020)....20

*Wenc v. New London Bd. of Educ.*,
2016 WL 4410061, at *13 (D. Conn. 2016), *aff'd*, 702 F. App'x 27 (2d Cir. 2017)....13

*Williams v. MTA Bus Co.*,
44 F.4th 115, 124-125, 137 (2d Cir. 2022)....14

*Wilson v. N.Y.P. Holdings, Inc.*,
No. 05-CV-10355, 2009 U.S. Dist. LEXIS 28876, at *8-9 (S.D.N.Y. 2009), *aff'd sub nom. Watson v. N.Y. Pressman's Union No. 2*, 444 F. App'x 500 (2d Cir. 2011) ........ 39

*Woolley v. Broadview Networks, Inc.*
2004 U.S. Dist. LEXIS 2716, at *8 (S.D.N.Y 2003) ........ 24

*Wright v. City of New York*,
2024 U.S. Dist. LEXIS 154796 (S.D.N.Y. 2024) ........ 10

*Zabar v. New York City Dep't of Educ.*,
2020 WL 2423450, at *6 (S.D.N.Y. 2020) ........ 41

**Statutes**

29 U.S.C.A. 794(d) ........ 9

29 U.S.C. § 705(9)(A) ........ 15

42 U.S.C. § 12102(A)(1) & ........ 15

ADA ........ *passim*

Americans with Disabilities Act, Rehabilitation Act ........ 9

New York City Human Rights Law ........ 9

NYCHRL ........ *passim*

NYSHRL ........ *passim*

Section 157(1) of the Public Housing Law ........ 45

RA*passim*

Section 157 ........ 45, 46

State Human Rights Law ........ 9

**Other Authorities**

Rule 8 ........ 6

RULE 8(A)(2) ........ 5, 8

Rule 8(a)(2)'s ........ 6

Rule 8(a) of the Federal Rules of Civil Procedure ........ 1

Rule 12(b)(6)....................................................................................................................4

**PRELIMINARY STATEMENT**

Plaintiff Damon Fields ("Plaintiff"), proceeding Pro Se, brings this employment discrimination lawsuit against his former employer, Defendant New York City Housing Authority ("NYCHA") and several of his former coworkers. The AC spans 72 pages, contains 330 paragraphs and asserts 21 causes of actions. (ECF No. 38). On its face and as demonstrated below, the Amended Complaint ("AC") violates Rule 8(a) of the Federal Rules of Civil Procedure ("FRCP") and should be dismissed.

Given the prolix nature of the AC, it is difficult to briefly synthesize it. As best we can glean, the core of the AC is as follows. Plaintiff was initially employed by NYCHA as Field Coordinator commencing November 18, 2021. On September 8, 2022, Plaintiff emailed his supervisors, Defendant Rudy Murillo ("Murillo") and Defendant Anthony Luciano ("Luciano"), and NYCHA's Human Resources Department requesting a transfer to another department because his "shift times/days [were] causing [him] undue hardship." (Iannucci Aff. at Exhibit "A"). Plaintiff stated he had a disability, which he identified at the time as a corneal eye condition, ocular migraines, irregular migraines, a sleep disorder, and "various complications associated with such." *Id.* Plaintiff explained that these conditions "ma[de] a night shift extremely difficult, even dangerous (to [him]self, [his] coworkers, and residents of NYCHA)" and made his "commute home exceedingly dangerous." *Id.*

Plaintiff reiterated these safety concerns multiple times in his email, stating: "I am unable to continue driving at night without endangering myself and others;" and "[a]s it stands, I will be unable to continue to safety operate NYCHA vehicles, (nor travel home from work safely) during evening hours and will decline to do so." *Id.*

On September 19, 2022, Plaintiff requested an assignment to another Department and indicated he believed he was qualified for a position in NYCHA's Public Housing Tenancy Operations Department ("PHTO"), Job Posting No. 540171(Community Coordinator). (Iannucci Aff. at Exhibit "B"). Plaintiff did not report to work until he could start a new position, which he did on October 17, 2022 when he was assigned to the Community Coordinator position in response to his request for an accommodation. After several poor performance evaluations, counseling memoranda and a write-up, Plaintiff was terminated on February 3, 2023 during his probationary period.

Plaintiff alleges that not being paid while he was unable to perform the essential functions of his then position of Field Coordinator was discriminatory. He further alleges that his poor evaluations and ultimate termination were discriminatory and retaliatory. Finally, Plaintiff alleges that he was subjected to a disability-based hostile environment and post-termination retaliation. As explained below, all of Plaintiff's claims fail as a matter of law.

## STATEMENT OF FACTS

The pertinent facts that must be taken as true for the purposes of this motion are as follows.

Plaintiff began working for NYCHA as a Field Coordinator on November 18, 2021. (ECF No. 38 at ¶ 14). On August 18, 2022, Plaintiff's supervisor announced a department-wide schedule change assigning all Field Coordinators in the Emergency Management Services Department ("EMSD") to a 4:00 p.m. to 12:00 a.m. shift. (*Id.* at ¶¶ 37, 44). At or around that time, Plaintiff disclosed that he "was medically unable to drive at night due to ocular migraines and other health-related impairments." (*Id.* at ¶ 40).

On September 8, 2022, Plaintiff submitted a formal request for an accommodation for his alleged disabilities, which include depression, anxiety, ocular migraines and migraines. (*Id.* at ¶ 54). In his email request, Plaintiff indicated that working a night shift would be "extremely

difficult, even dangerous (to [him]self, [his] coworkers, and residents of NYCHA)" and would make his "commute home exceedingly dangerous." (Iannucci Aff. at Exhibit "A"). He further stated, "I am unable to continue driving at night without endangering myself and others" and as it stands, I will be unable to continue to safety operate NYCHA vehicles, (nor travel from work safely) during evening hours and will decline to do so. (*Id.*).

As an accommodation, Plaintiff sought reassignment to a daytime position. (ECF No. 38 at ¶ 55). Specifically, via email dated September 19, 2022, Plaintiff asked that he be considered for a Community Coordinator position in PHTO. (See Iannucci Aff. at Exhibit "B"). NYCHA granted Plaintiff's request and he began working as a Community Coordinator in PHTO on October 17, 2022. (ECF No. 38 at ¶¶ 14, 80, 126, 131).

Because he could not drive at night and report to work at night, both of which were essential functions of his Field Coordinator job, Plaintiff did not report to work from September 12, 2022 to October 16, 2022. (*See id.* at ¶¶ 54, 131). Given that Plaintiff did not have any accrued paid leave available at the time, he did not receive compensation and health insurance coverage while he was not working. (*See id.* at ¶¶ 91).

After his transfer to PHTO, Plaintiff had myriad performance and attendance issues, leading to a write-up on November 28, 2022, a counseling memorandum on December 21, 2022 (he had also received a counseling memorandum before his transfer) and his third negative performance evaluation since being hired (he received unsatisfactory evaluations on February 17, 2022, May 17, 2022 and January 3, 2023). (*Id.* at ¶¶ 2, 161, 168-169, 271, 311; Iannucci Aff., Exhibit "C" at ¶¶ 37, 46, 83, 223, 247, 255-258). Given Plaintiff's apparent inability to improve, and probationary status, NYCHA terminated his employment on February 3, 2023. (*See id.* at ¶¶ 133, 178).

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.* Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[A] plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In a discrimination case, a plaintiff must plead facts that give "plausible support to a minimal inference" of discriminatory causality. *Littlejohn v. City of New York*, 795 F.3d 297, 310-11 (2d Cir. 2015). This requires the plaintiff to "supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of 'conceivable' to the plausible."" *Marcus v. Leviton Manufacturing, Co*., 661 F. App'x 29, 32 (2d Cir. 2016) (quoting *Vega v. Hempstead Union Free School District*, 801 F.3d 72, 87 (2d Cir. 2015)).

In ruling on a motion to dismiss, a complaint is "deemed to include . . . any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citation omitted).

Although pro se pleadings, as applicable in this case, are liberally construed and held to less stringent standards, courts "are not bound to accept as true legal conclusions couched as a factual allegation," and need not accept as true any conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. at 678; *see also Saudagar v. Walgreen Co.*, 2019 WL 498349, at *3 (S.D.N.Y. Feb. 8, 2019) (citing *Twombly*, 550 U.S. at 555) (". . . [A] court is not bound to accept 'conclusory' allegations or legal conclusions masquerading as factual conclusions"); *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996). "[T]he liberal treatment afforded to pro se litigants does not

exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation omitted).

Nor must a court "accept as true allegations that conflict with a plaintiff's prior allegations." *Dozier v. Deutsche Bank Trust Co. Ams.*, 2011 U.S. Dist. LEXIS 100467, at *2 (S.D.N.Y. 2011). "Where a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true.'" *Colliton v. Cravath, Swaine & Moore LLP*, 2008 U.S. Dist. LEXIS 74388, at *19 (S.D.N.Y. 2008) (quoting *Wallace v. New York City Dept. of Corr.*, 1996 U.S. Dist. LEXIS 22368, at *2 (E.D.N.Y. 1996)).

## ARGUMENT

## POINT I

## THE AC SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH RULE 8(A)(2)

Rule 8(a)(2) of the FRCP mandates that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" As explained by this Court:

> "Courts in this Circuit have dismissed complaints that are unnecessarily longwinded, unclear, or conclusory," *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15D, AFL-CIO v. Tightseal Constr., Inc.*, No. 17 Civ. 3671, 2018 U.S. Dist. LEXIS 138041, . . . at *12 (S.D.N.Y. Aug. 14, 2018), because "unnecessary prolixity in a pleading places an unjustified burden on the court and the party who [*7] must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). . . .

*Rubin v. N.Y.C. Bd. of Educ.*, 2023 U.S. Dist. LEXIS 36082, at *6-7 (S.D.N.Y. 2023) (collecting cases).

Pro se plaintiffs are not exempt from Rule 8(a)(2)'s clear mandate. *See*, *e.g.*, *Mendes Da Costa v. Marcucilli*, 675 F, App'x 15, 17 (2d Cir. 2017) (affirming dismissal of pro se plaintiff's "convoluted and repetitive" complaint which totaled nearly 50 pages); *Jones v. Nat'l Comms. & Surveillance Networks*, 266 F. App'x 31, 33 (2d Cir. 2008) (affirming dismissal of pro se plaintiff's 58-page complaint); *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (holding that pro se complaint did not comply with Rule 8 because "it contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"); *Gatling-Brooks v. Liberty Mut. Ins. Co.*, 2024 U.S. Dist. LEXIS 231936, at *5-6 (S.D.N.Y. 2024) (dismissing pro se plaintiff's confusing, 112-page complaint); *Johnson v. N.Y. Corp.*, 2024 U.S. Dist. LEXIS 159018, at *9-10 (S.D.N.Y. 2024) (dismissing pro se plaintiff's complaint because plaintiff presented disjointed, extraneous and confusing information making it difficult for the Court to discern the specific incidents that are the bases for the alleged violation of his rights).

Plaintiff's 72-page, 330-paragraph Complaint is convoluted, repetitive, unclear, replete with unnecessary details and internally inconsistent. For example, the Complaint:

- alleges that Defendants failed to consider Plaintiff for vacant positions, but fails to allege that he ever applied, or tried to apply, for such positions (*Id.*at ¶¶ 43, 69);

- alleges that Plaintiff should not have been sent home even though all Field Coordinators in EMSD were required to work (and drive) at night, and he reported that he could not safely drive or commute to/from work at night (*Id.* at ¶¶ 40, 73; Iannucci Aff. at Exhibit "A");

- alleges that Defendants failed to engage in the interactive process even though Defendants promptly responded to Plaintiff's communications regarding his requested accommodation, provided him with the relevant form that he needed to complete, and granted his request to work a day shift after he provided the information they needed to determine whether to grant his request (ECF Doc. 38 at ¶¶ 16, 39, 41, 60, 81, 126, 207, 261, 282; Iannucci Aff. at Exhibits "A" & "B");

- alleges that NYCHA transferred Plaintiff to PHTO so he could work a day shift but also alleges that NYCHA failed to accommodate Plaintiff's request to be reassigned to a job where he could work a day shift (*See id.* at ¶¶ 126, 261; Iannucci Aff. at Exhibit "B");

- claims that Plaintiff was denied a reasonable accommodation that other, similarly-situated employees received, but does not allege whether he submitted medical documentation in connection with his request as quickly as they did (*Id.* at ¶ 94, 102-107);

- alleges that Plaintiff was reassigned to various worksites for retaliatory reasons but does not allege that such locations were worse than his previous assignments (*Id.* at ¶¶ 131, 139, 141, 150, 154, 235, 271);

- alleges that the unsatisfactory performance evaluation that Plaintiff received on January 3, 2023 was designed to justify Plaintiff's constructive demotion (i.e., the transfer that Plaintiff requested) months earlier October 17, 2022 (*Id.* at 170);

- contains superfluous, irrelevant allegations about testimony that Yudkovitz provided in another, unrelated matter (*Id.* at ¶¶ 89, 95);

- contains superfluous, irrelevant allegations about Plaintiff's application for unemployment insurance benefits (*Id.* at ¶¶ 122-125, 185, 196-198, );

- contains baseless, conclusory allegations about NYCHA's attempt to prevent him from securing a new job but does not allege any specific facts to support such allegations or his belief that prospective employers did not hire him because of something NYCHA actually did (*Id.* at ¶¶ 199-203); and

- contains vague, conclusory allegations about the individual Defendants.

It is neither the Court's, nor the Defendants', job to decipher Plaintiff's claims. *See Pocock v. Software in the Pub. Int. Inc.*, 2025 U.S. Dist. Lexis 162686, at *13-14 (S.D.N.Y. 2025). Because the Complaint is neither "short" nor "plain," as required by Rule 8(a)(2), it must be dismissed. *See Blakely v. Wells*, 209 Fed. App'x 18, 19 (2d Cir. 2006) (affirming dismissal of a complaint spanning 57 pages and containing 597 paragraphs); *Owens v. New York AG*, 10 Fed. App'x 34, 35 (2d Cir. 2001) (affirming dismissal of a 55-page complaint).

## POINT II

## THERE IS NO PLAUSIBLE FAILURE TO ACCOMMODATE CLAIM

Plaintiff alleges that the Defendants failed to accommodate him in violation of the Americans with Disabilities Act ("ADA"), Rehabilitation Act ("RA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") (See Claims 1, 6, 10, 15). To establish a *prima facie* claim under the ADA, the RA, the NYSHRL, and the NYCHRL for failure to accommodate, Plaintiff must show that: (1) he is a person with a disability under the meaning of the relevant statute; (2) NYCHA is covered by the statute and had notice of his disability; (3) with reasonable accommodation he could perform the essential functions of the job at issue; and (4) NYCHA refused to make such accommodations. *See Udoh v. N.Y.C. Dep't of Probation*, 2025 U.S. Dist. LEXIS 148391, at *18 (S.D.N.Y. 2025) ("[The ADA] standard is the same under the RA, NYSHRL, and the NYCHRL); *see* RA, 29 U.S.C.A. 794(d) ("the standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [the ADA]"); *Arazi v. Cohen Brothers Realty Corp.,* 2022 U.S. Dist. LEXIS 56549, 2022 WL 912940, at *6 (S.D.N.Y. 2022) ("Courts apply the same standard for failure to accommodate cases under the ADA, NYSHRL, and NYCHRL.") (citing *Rodriguez by Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999)).

"Courts may dismiss a complaint if the plaintiff fails to allege the 'essential functions' of a position 'or that he was able to perform those functions.'" *Paul v. Cnty. of Madison,* 2023 U.S. Dist. LEXIS 172401, at *24 (N.D.N.Y. 2023) quoting *Brown v. UPS*, 2022 U.S. Dist. LEXIS 159872, at *6 (N.D.N.Y. 2022).

Plaintiff's failure to accommodate claim fails as a matter of law. Plaintiff was unable to perform the essential functions of his job as a Field Coordinator. In fact, his written communications with the Defendants make clear that it would be a danger to himself and others for him to continue in his position. (See Iannucci Affirmation at Exhibit "A;" ECF Doc. 38 at ¶¶ 53-54).[1] Plaintiff specifically alleges that he is unable to drive at night without endangering himself and others, and cannot report to/from work safely at night. (Iannucci Aff. at Exhibit "A"). Plaintiff's inability to perform the duties "inherent" in his assigned position is fatal to his claim. *See Wright v. City of New York*, 2024 U.S. Dist. LEXIS 154796 (S.D.N.Y. 2024) (dismissing failure to accommodate claim where plaintiff was unable to perform essential functions of her job); *Cangro v. N.Y.C. Dep't of Education*, 2024 U.S. Dist. LEXIS 148244 (S.D.N.Y. 2024) (even at the pleading stage, plaintiff must show an accommodation exists that permits him to perform the essential functions of his job).

NYCHA was not required to offer Plaintiff another position. *See Blair v. L.I. Child & Family Dev. Servs*, 2017 U.S. Dist. LEXIS 14177, at *38 (E.D.N.Y. 2017) ("[A]s she was unable to work, she could not perform the job with a reasonable accommodation of a transfer, and, in any event, 'an employer is not required to provide disabled employees with alternative employment when the employee is unable to meet the demands of his present position."') *quoting Christopher v. Laidlaw Transit Inc.,* 899 F. Supp. 1224, 1227 (S.D.N.Y. 1995). But NYCHA endeavored to find Plaintiff a new position and did in fact find Plaintiff a new position. Transferring Plaintiff to a vacant position that he requested and was qualified for was a reasonable accommodation. *See Douglas v. Long Island Jewish Med. Ctr.*, 2010 U.S. Dist. LEXIS 77464, at *8 (E.D.N.Y. 2010)

---

[1] Because the Complaint refers to Plaintiff's September 8, 2022 email, it is incorporated by reference into the Complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (when ruling on a motion to dismiss, a complaint is "deemed to include . . . any statements or documents incorporated in it by reference.").

(explaining that a transfer to a different position can be a reasonable accommodation); *Lalla v. Consol. Edison Co. of* New *York, Inc.*, 2001 U.S. Dist. LEXIS 5312, at *3 (S.D.N.Y. 2001) (explaining that reassignment to a vacant position may be a reasonable accommodation).

Documents incorporated by reference into the Complaint show that Plaintiff was given the accommodation he sought. During the period when Plaintiff was on leave from the Field Coordinator position, Plaintiff requested to be transferred to a new position. Plaintiff sent an email to the Defendants on September 8, 2022, stating in pertinent part:

> I am officially requesting a 'reasonable accommodation', etc., transfer from the new EMSD division to any other department within NYCHA I would qualify for . . . . The present shift times/days are causing me undue hardship, and this is an official request to correct said hardship condition. . . .
>
> As it stands, I will be unable to continue to safely operate NYCHA vehicles, (nor travel home from work safely) during evening hours and will decline to do so. . . .

(Iannucci Aff. at Exhibit "A").

On September 13, 2022, as part of the interactive process, NYCHA emailed Plaintiff to inform him that the medical documentation that he provided did not support his request to work a daytime shift. (Iannucci Aff. at Exhibit "B"). In that email, NYCHA explained:

> . . . In order to review a request for a RAR, please provide a note from your medical provider (on letterhead, and dated within two weeks of today), which clearly sets forth the accommodation needed for you to perform the essential functions of your job, and explains why that accommodation is necessary.
>
> Upon receipt of the supporting medical documentation, we can consider your request. . . .

(*Id.*). Plaintiff does not allege that he ever provided medical documentation supporting his need to be accommodated with a daytime shift.

On September 19, 2022, while his request for an accommodation was pending, Plaintiff again requested a transfer and submitted a list of NYCHA job postings in which he was interested, including the position of Community Coordinator. (See Iannucci Aff. at Exhibit "B").

As per his request, Plaintiff was reassigned to PHTO and appointed to the position of Community Coordinator, effective October 17, 2022. (ECF No. 38 at ¶ 126, 131; Iannucci Aff. at Exhibit "B")[2]. Because Plaintiff was granted the very accommodation he requested, he cannot state a failure to accommodate claim. *See Blodgett v. 22 S. St. Operations, LLC,* 828 Fed. App'x 1, 3-4 (2d Cir. 2020) ("even assuming that [the plaintiff's] request for a leave of absence constituted a request for a reasonable accommodation, the record is clear that [her employer] in fact granted her request for leave . . . As a result, [the plaintiff] has failed to demonstrate that her employer refused to make such accommodations . . . which is fatal to her *prima facie* case of disability discrimination").

Plaintiff also suggests that the Defendants failed to engage in the interactive process. But the communications cited above demonstrate that not only did the Defendants engage in the interactive process, that process culminated in Plaintiff receiving the accommodation he sought. *Cangro v. N.Y.C. Dep't of Finance*, 2024 U.S. Dist. LEXIS 148244, at *21 (S.D.N.Y. 2024) ("These allegations do not permit an inference of a failure to engage in cooperative dialogue but rather of the Defendant's effort to engage in such a dialogue.") (citing *Rochelle v. Autozoners*, *LLC*, 2023 U.S. Dist. LEXIS 160825, at *16 (S.D.N.Y. 2023) (offering plaintiff alternative forms of accommodation is indicative of engaging in a cooperative dialogue)).

In addition, Plaintiff's allegation that Murillo "consciously failed to engage in the interactive process" in August 2022 when Plaintiff verbally informed him of his neurological

---

[2] Plaintiff contends that his transfer to PHTO constituted a constructive demotion, but Defendants were simply granting him the specific accommodation he requested. (ECF No. 38 at ¶¶ 140, 192).

conditions directly contradicts the Original Complaint. (ECF Doc. 38 at ¶¶ 39, 207). Indeed, the Original Complaint alleged that, when Plaintiff informed Murillo that he would like to request a reasonable accommodation in August 2022, Murillo told him to submit emails and medical documentation (as part of the interactive process) (Iannucci Aff. at Exhibit "C" at ¶ 56). Where, as here, Plaintiff has "blatantly changed his statement of the facts in order to respond to [Defendants'] motion to dismiss and directly contradict[ed] the facts set forth in his original complaint," the Court may accept the facts set forth in the original complaint as true. *See Colliton*, *supra*; *see also Brooks v. 1st Precinct Police Dept.*, 2014 WL 1875037, at *2 (E.D.N.Y. 2014) ("where allegations in an amended pleading 'directly contradict' pleadings in the original complaint, courts have disregarded the amended pleading."); *Kilkenny v. Law Office of Cushner & Garvey, L.L.P.,* 2012 WL 1638326, at *5 (S.D.N.Y. 2012) (". . . a court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings."); *Palm Beach Strategic Income, LP v. Salzman*, 2011 WL 1655575, at *16 (E.D.N.Y. 2011) ( "a district court has no obligation to accept as true an AC's allegations, if they directly contradict the facts set forth in his original complaint") (citation, alteration, and quotation marks omitted), *aff'd*, 457 F. App'x 40 (2d Cir. 2012).

There are simply no facts alleged in the Complaint creating a plausible inference that Defendants refused to engage with Plaintiff in securing an accommodation for him. *See Lee v. Saul*, 2020 WL 7029264, at *3 (S.D.N.Y. 2020) (dismissing failure to accommodate claim where the plaintiff "provide[d] no details or specific facts describing how the Defendant failed to engage in the interactive process"), *report and recommendation adopted in part and modified in part on other grounds*, 2020 WL 5836513 (S.D.N.Y. 2020).

Plaintiff appears to argue that placing him on unpaid status after he notified his supervisors that it was too dangerous for him to drive and report to work at night violated the ADA. The law is to the contrary. *See Blair*, 2017 U.S. Dist. LEXIS 14177, at *37 (being on unpaid leave while unable to perform the essential functions of a job does not violate the ADA)*; see also Wenc v. New London Bd. of Educ.*, 2016 WL 4410061, at *13 (D. Conn. 2016) ("Temporary leaves of absence—whether they are paid or unpaid—can provide a reasonable accommodation under the ADA where the leave will likely enable an employee to return to work."), *aff'd*, 702 F. App'x 27 (2d Cir. 2017); *McNamara v. Tourneau, Inc.*, 496 F. Supp. 2d 366, 376 (S.D.N.Y. 2007) ("[A]n unpaid leave of absence can be a reasonable accommodation under the ADA, where 'it is finite and will be reasonably likely to enable the employee to return to work.' ") (collecting cases).

Because the Complaint fails to plausibly allege that NYCHA failed to accommodate Plaintiff and/or engage in the interactive process, the First, Sixth, Tenth and Fifteenth Causes of Action should be dismissed.

## POINT III

## THERE IS NO PLAUSIBLE DISABILITY DISCRIMINATION CLAIM

Plaintiff alleges that Defendants discriminated against him because of his disabilities in violation of the ADA, the RA, the NYSHRL, and the NYCHRL. Such claims are analyzed under the burden-shifting framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Atherley v. N.Y.C. Dept. of Educ.*, 2024 U.S. Dist. LEXIS 58227, at *15 (S.D.N.Y. 2024). Under this burden-shifting analysis:

> a plaintiff must first establish a *prima facie* case of discrimination, then "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employer's action against the employee. If the employer does so, then the burden shifts back to the employee to show that the employer's articulated reason is pretext for discrimination."

*Id.* at *15 (S.D.N.Y. 2024) (quoting *Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 86-87 (2d Cir. 2022)). On a motion to dismiss, the Court need only analyze whether the Complaint sufficiently alleges a *prima facie* case of disability discrimination, not whether the employer had any legitimate, non-discriminatory reasons for its actions. *Id.* at *16.

To state a *prima facie* case of disability discrimination under the ADA, the RA and the NYSHRL, Plaintiff must plead facts demonstrating that: (1) his employer is subject to the relevant statute; (2) he is disabled within the meaning of the relevant statute; (3) he was otherwise qualified to perform the essential functions of his job with or without a reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *See Crawford v. Bronx Cmty. Coll.*, 2024 U.S. Dist. LEXIS 152068, at *25 (S.D.N.Y. 2024). In contrast to the ADA, RA, and NYSHRL, a plaintiff need not allege that he was qualified for the position to state a *prima facie* case under the NYCHRL. *Id.* at 26 (citing *Williams v. MTA Bus Co.*, 44 F.4th 115, 124-25, 137 (2d Cir. 2022)).

As explained below, the Complaint fails to state a *prima facie* case of disability discrimination and, therefore, the Second, Seventh, Eleventh and Sixteenth Causes of Action must be dismissed.

### A. The AC Fails to State a Disability Discrimination Claim Under the ADA And/Or RA

To establish a prima facie case under the ADA and RA, one must allege that: "[i] his employer is subject to the ADA; [ii] he was disabled within the meaning of the ADA; [iii] he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and [iv] he suffered adverse employment action because of his disability." *Lyman v. N.Y. Presbyterian Hosp.*, 2014 U.S. Dist. LEXIS 95492, at *17 (S.D.N.Y. 2014); *Dominguez v. Bd. of Educ. of the Yonkers City Sch. Dist.*, 2024 U.S. Dist. LEXIS 124851, at *10 (S.D.N.Y. 2024) (noting that the pleading requirements for a *prima facie* case under the ADA and RA are the same).

**1. The AC Fails to Sufficiently Allege that Plaintiff Was "Disabled"**

The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more major life activities." *Puranik v. Children's Place Servs. Co., LLC*, 2025 U.S. Dist. LEXIS 171797, at *10 (S.D.N.Y. 2025) (citing 42 U.S.C. § 12102(A)(1) & 29 U.S.C. § 705(9)(A)). Plaintiff alleges that he suffers from depression, anxiety, ocular migraines, migraines and a sleep disorder, and generally alleges that such conditions affect his ability to sleep, concentrate, drive at night, make decisions, and perform tasks requiring precision and attention. (ECF Doc. 38 at ¶¶ 1, 54, 102). To the extent Plaintiff's disability claim is based on his alleged inability to drive and/or commute at night, it must be dismissed because "driving and commuting to work are not major life activities." *See Dechberry v. New York City Fire Dept.*, 124 F. Supp. 3d 131, 152 (E.D.N.Y. 2015) (collecting cases). Moreover, as explained below, Plaintiff fails to sufficiently allege that his impairments *substantially* limit any major life activity.

"Courts examine several factors in determining whether a plaintiff's limitation qualifies as 'substantial,' including 'the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long-term impact.'" *Puranik*, 2025 U.S. Dist. LEXIS 171797 at *11 (quoting *O'Hara v. Bd. of Coop. Educ. Servs. S. Westchester*, 2020 U.S. Dist. LEXIS 47210, at *12 (S.D.N.Y. 2020)).

Here, Plaintiff alleges facts concerning the frequency and duration of his limitations, but he does not allege any non-conclusory facts regarding the severity or long-term nature of the impact of his impairments. (*See* ECF Doc. 38 at ¶¶ 48-52). Consequently, Plaintiff has not sufficiently alleged that his impairments *substantially* limit any of his major life activities. Accordingly, his ADA and RA discrimination claims must be dismissed. *See Puranik*, 2025 U.S. Dist. LEXIS 171797 at *14-15 (granting motion to dismiss where plaintiff offered no description of how often, how long or how severely her major depressive disorder, adjustment disorder and

anxiety impacted her sleep patterns, her ability to think clearly, or her capacity to concentrate); *Abramov v. Northwell Health Sys.*, 2024 U.S. Dist. LEXIS 172589 at *9 (E.D.N.Y. 2024) (plaintiff failed to plead a disability where she failed to provide any details on the nature and severity of her neurological disorder, or its duration or effects); *Earl v. Good Samaritan Hosp. of Suffern NY*, 625 F. Supp. 3d 292, 303-06 (S.D.N.Y. 2022) (granting motion to dismiss where plaintiff alleged that his chronic kidney disease prevented him from getting "a peaceful night's rest" but failed to adequately plead the frequency, duration, or severity of his sleeping problems).

**2. The AC Fails to Sufficiently Allege that Plaintiff Was Qualified to Perform the Essential Functions of His Job**

After all Field Coordinators in the EMSD were assigned to a 4 p.m. to 12 a.m. schedule, being able to report to work and drive at night were essential functions of Plaintiff's job. (*See* ECF Doc. 38 at ¶¶ 36-37, 44-45). By email dated September 8, 2022, Plaintiff stated in no uncertain terms that he could not perform either of those essential functions. Specifically, he stated:

> . . . I do in fact have a disability that is making a night shift extremely difficult, even dangerous (to myself, my coworkers, and residents of NYCHA). . . . <u>I am unable to continue driving at night without endangering myself and others</u>. . . . As it stands, <u>I will be unable to continue to safely operate NYCHA vehicles, (nor travel home from work safely) during evening hours and will decline to do so</u>.

(Iannucci Aff. at Exhibit "A") (emphasis added).

Because Plaintiff could not, and would not, drive at night or report to work at night, he was not qualified to perform the essential functions of his Field Coordinator job in EMSD. *See Lewis v. New York City Police Dept.*, 908 F. Supp. 2d 213, 327 (E.D.N.Y. 2012) ("Courts have consistently ruled that an employee cannot be considered otherwise qualified when she is unable to report to work at the required time, because she is not able to perform the essential functions of her job."), *aff'd sub nom.*, *Lewis v. NYCH Police Dept.*, 537 F. App'x 11 (2d Cir. 2013). *See also Dechberry*, 124 F. Supp. 3d at 153 (finding that plaintiff was not otherwise qualified to perform the essential

functions of her job where she could not drive or take transportation to work); *Rinaldi v. Quality King Distributors, Inc.*, 29 F. Supp. 3d 218, 227 (E.D.N.Y. 2014) (dismissing ADA claim where plaintiff could not demonstrate that she could perform the essential function of "showing up for work").

Plaintiff's contention that driving was not an essential function of his job before August 2022 is of no moment. The essential functions of a position may change over time and need not be listed in a written job description. *See Thomas v. Amazon.com, Inc.*, 2022 U.S. Dist. LEXIS 67482, at *5 (E.D.N.Y. 2022) (granting motion to dismiss and explaining that the inclusion / absence of duty in a job description is not determinative of whether the duty is an essential function of the job); *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 227 (2d Cir. 2017) (dismissing failure to accommodate claim where plaintiff pharmacist was terminated for refusing to perform injections, which his employer made an essential function of his job after he had been employed for 34 years).

Effective August 21, 2022, reporting to work from 4:00 p.m. to 12:00 a.m. and driving during those hours were essential functions of the EMSD Field Coordinator position. (ECF Doc. 38 at ¶ 45). Although Plaintiff apparently disputes whether driving at night was an essential function of his job, he does not dispute that reporting to work at night was an essential function of his Field Coordinator job after August 21, 2022.

Therefore, to the extent that Plaintiff's disability discrimination claims are based on Defendants' treatment of Plaintiff while he was assigned to the night shift in EMSD (August 21, 2022 - October 16, 2022), his claims fail as a matter of law. During that period, Plaintiff could not perform the essential functions of his job.

**3. The AC Fails to Sufficiently Allege that Plaintiff Suffered an Adverse Employment Action Because of His Disability**

Under the ADA, an adverse employment action must be "materially adverse in the terms and conditions of employment." *Pierre-Louis v. United States Postal Serv.*, 2025 U.S. Dist. LEXIS 149651, at *31 (S.D.N.Y. 2025) (quoting *Sanders v. New York City Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). Such "action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

Plaintiff alleges that he suffered the following adverse employment actions for discriminatory reasons: being placed on an unpaid leave of absence; losing pay and benefits while on leave; being stripped of duties; being treated less favorably than similarly-situated employees; being constructively demoted; not being allowed to work a day shift; being denied training and equipment; being reassigned to various work locations; receiving a pretextual write-up on November 28, 2022, counseling memoranda on September 12, 2022 and December 21, 2022 and a negative performance evaluation on January 3, 2023; being subjected to micromanagement; and being terminated. As explained below, with the exception of termination, none of these actions qualifies as adverse employment action under the ADA.

The AC does not allege that the less favorable treatment, constructive demotion, counseling memoranda, negative performance reviews, micromanagement, lack of training/equipment or reassignments caused Plaintiff to receive materially adverse terms and conditions of employment. Such actions therefore do not qualify as adverse employment actions for purposes of Plaintiff's discrimination claims. *See Pierre-Louis*, 2025 U.S. Dist. LEXIS 149651 at *32-33 ("Plaintiff's argument that he was assigned to 'less favorable duties,' without specific allegations as to what those duties entailed and how they were different from other, more favorable tasks, does not suggest that the change in duties was 'material' and therefore is not sufficient . . . to state an adverse

employment action."). Therefore, to the extent that Plaintiff's discrimination claims are based on such actions, his claims fail as a matter of law.

The AC fails to allege that Defendants are responsible for Plaintiff's unpaid leave of absence and gap in health insurance. Plaintiff's unpaid status and gap in health insurance were based on his representation that he could not do his job. Indeed, Plaintiff told his supervisors that he could not and would not report to work or drive at night, and he did not report to work until he was reassigned to a day shift. Plaintiff's resultant lapse in pay and benefits cannot be considered adverse employment actions. *See Spaulding v. New York City Dept. of Educ.*, 2015 WL 12645530, at *40 (E.D.N.Y. 2015) (plaintiff failed to show the temporary denial of her health benefits was an adverse employment action where she failed to return to work and had not shown that she was entitled to health benefits before she returned to work). Therefore, to the extent that Plaintiff's discrimination claims are based on the unpaid leave and break in health insurance coverage, such claims must be dismissed.

Although Plaintiff alleges that he was subjected to pretextual disciplinary actions, he does not specify what they were. He mentions receiving counseling memoranda and negative performance evaluations, but those are not adverse employment actions. *See O'Hara v. Bd. of Coop. Educ. Servs.*, 2020 U.S. Dist. LEXIS 47210, at *41-42 (S.D.N.Y. 2020) (granting motion to dismiss ADA claim and explaining that counseling memoranda do not constitute adverse employment action); *see also Morales v. NYS Dept. of Labor*, 865 F. Supp. 2d 220, 244 (N.D.N.Y. 2012) ("issuance of a counseling memorandum and a notice of discipline . . . is not an adverse employment action as a matter of law"), *aff'd*, 530 F. App'x. 13 (2d Cir. 2013).

Moreover, even if the actions above did qualify as adverse employment actions, the AC does not plausibly allege that Plaintiff was subjected to such actions *because of* his disabilities. "[V]ague and conclusory assertions are not enough to plausibly allege discriminatory intent. . . ." *Veras v. N.Y.C. Dept. of Educ.*, 2024 U.S. Dist. LEXIS 126175, at *10 (S.D.N.Y. 2024) (dismissing ADA and RA discrimination claims where plaintiff failed to allege that defendants refused her requested accommodation, made disparaging comments towards her based on her disability or treated any specific non-disabled employees more favorably that her).

Plaintiff does not allege that any Defendant made any invidious comments about disabled people suggesting a bias against individuals with disabilities. Nor does Plaintiff allege that similarly-situated, non-disabled employees with performance / attendance issues received positive performance evaluations and did not receive counseling memoranda. Without such allegations, there is no plausible inference that Defendants took any adverse employment actions against Plaintiff *because* of his alleged disabilities. *See Wein v. N.Y.C. Dept. of Educ.*, 2020 U.S. Dist. LEXIS 150136, at *13 (S.D.N.Y. 2020) (no discriminatory animus where plaintiff failed to show that defendants: criticized him in discriminatory terms based on his disability; made invidious comments about him or other disabled people; or treated non-disabled employees more favorably than him).

Plaintiff alleges that Defendants treat employees with mental disabilities worse than employees with physical disabilities. (ECF Doc. 38 at ¶¶ 94-97, 101-113). To support this claim, Plaintiff alleges that Defendants granted Field Coordinator Myra Miller's request for a reasonable accommodation promptly around the same time that Plaintiff requested a reasonable accommodation, and unlike Plaintiff, Ms. Miller did not have any mental disabilities.[3] (*See id.*).

---

[3] Plaintiff also alleges that Defendants allowed two Field Coordinators to work daytime hours on weekends (not when he worked). (ECF Doc. 38 at ¶ 94). However, Plaintiff does not allege whether they had a disability and, if

In addition, Plaintiff alleges that Defendants temporarily accommodated Ms. Miller by allowing her to work remotely (and continue her pay and health insurance coverage) when she became unable to perform the essential functions of her job, but placed him on an unpaid leave when he was unable to perform the essential functions of his job. (*See id.* at ¶¶ 103-107).

However, the facts as alleged do not show that Defendants treated Ms. Miller more favorably that Plaintiff. In April 2022 (before Field Coordinators were required to report to work and drive at night), Ms. Miller asked to be accommodated by working remotely. (*Id.* at ¶ 105). The necessary paperwork was submitted within a day of her request. (*Id.*). Ms. Miller submitted an updated doctor's note in July 2022 substantiating her need to continue working remotely. (*Id.* at ¶¶ 106-107). However, after Ms. Miller submitted a doctor's note in September 2022 saying that she could never drive or perform field work (both essential functions of the Field Coordinator position as of August 2022), Defendants arranged for her transfer to a new position. *Id.*

Unlike Ms. Miller, Plaintiff did not request to work remotely as an accommodation. Plaintiff did not work in any capacity for 34 days after he submitted his request for a reasonable accommodation. Ms. Miller continued to receive her pay and health insurance coverage because, unlike Plaintiff, she continued working. There is no basis to infer that Plaintiff's pay and health insurance coverage ceased because he had a mental disability.

Moreover, Plaintiff allegedly suffered from physical disabilities as well as mental disabilities. Indeed, when he first learned that all EMSD Field Coordinators would be reassigned to a night shift in August of 2022, Plaintiff disclosed that he was "medically unable to drive safely at night due to ocular migraines and other health-related impairments." (*Id.* at ¶ 40). He did not specifically mention his alleged mental disabilities until September 8, 2022. (*Id.* at ¶ 54). Given

---

so, whether it was mental or physical. Thus, their weekend schedules do not support Plaintiff's allegation that Defendants treat those with mental disabilities worse than those with physical disabilities.

his alleged physical disabilities, Plaintiff is in the same subgroup as Ms. Miller, and she is therefore not an appropriate comparator.

The allegations about Ms. Miller simply do not support Plaintiff's claim that Defendants treat employees with mental disabilities worse than employees with physical disabilities.

Nor do Plaintiff's allegations about Richard Washington support an inference of discrimination against employees with mental disabilities. Plaintiff alleges that Mr. Washington suffers from insomnia, anxiety and blurred vision, and was suspended, forced to exhaust his accrued leave, and deprived of pay and benefits. (*Id.* at ¶ 112). Plaintiff alleges that NYCHA's treatment of him and Mr. Washington establishes a "pattern" of discriminating against employees with mental health disabilities. (*Id.*). However, Plaintiff does not provide any context regarding the circumstances under which Mr. Washington experienced such alleged actions. For example, Plaintiff does not allege that Mr. Washington was suspended, forced to exhaust his leave, and deprived of pay and benefits in response to a request for an accommodation. Moreover, even if Mr. Washington experienced such actions in response to a request for an accommodation, Defendants' alleged treatment of two employees hardly constitutes a pattern.

Plaintiff also fails allege whether Mr. Washington submitted the necessary medical documentation in as timely a manner as Ms. Miller. Thus, there is no basis for concluding that Mr. Washington and Ms. Miller were similarly-situated. In fact, Plaintiff does not allege that Mr. Washington and any employees with a physical disability were similarly-situated. Absent such allegation, there is no basis to conclude that Defendants treated Mr. Washington any worse because of his alleged mental disabilities. Plaintiff also alleges that he was treated less favorably than Candace Edwards, who is not disabled, but fails to plausibly allege that they were similarly-

situated and/or how, specifically, they were treated differently. The allegations about Ms. Edwards do not give rise to an inference of discrimination against individuals with disabilities.

With regard to Plaintiff's transfer to PHTO, there is no inference of disability discrimination where Plaintiff requested to be transferred to the Community Coordinator position in PHTO and NYCHA simply granted his request.

As for being reassigned to various worksites upon being transferred to PHTO, Plaintiff does not allege that the individual(s) who decided to reassign him to any such worksites knew or suspected that he had a disability. (*See* ECF No. 38 at ¶¶ 139, 141, 150). Therefore, there is no basis to conclude that Plaintiff was reassigned to various worksites *because of* his disability. *See Adkins v. Briggs & Stratton Corporation,* 159 F.3d 306 (7th Cir. 1998) ("[a]s a matter of both logic and law, it is impossible for an employer to take action because of a disability the employer knew nothing about.")*; see also Harris v. N.Y.C. Human Res. Admin.*, 2022 U.S. Dist. LEXIS 139134 (S.D.N.Y. 2022) (granting motion to dismiss disability discrimination claims where plaintiff failed to allege that decision-maker was aware of her disability); *Luciano v. City of Rochester,* 2010 U.S. Dist. LEXIS 21867, at *2 (W.D.N.Y. 2010) ("Because an employer cannot be liable for disability discrimination if the employer did not know that the employee suffered a disability, or regarded the employee as suffering from a disability, I find that plaintiff has failed to state a claim of disability discrimination."); *Kolivas v. Credit Agricole,* No. 95 Civ. 5662, 1996 U.S. Dist. LEXIS 17478, 1996 WL 684167, at *3 (S.D.N.Y. 1996), *aff'd*, 125 F.3d 844 (2d Cir. 1997) ("for there to be causation, the employer must have knowledge of the disability").

With respect to Plaintiff's termination, the AC does not plausibly state that Donohue, who allegedly decided to terminate him, knew about his disabilities. (ECF No. 38 at ¶¶ 183).[4] Where, as here, Plaintiff has failed to allege that the person(s) who decided to terminate him knew about his disabilities, there is no plausible inference that he was terminated because of his disabilities. *See Harris v. N.Y.C. Human Res. Admin.*, 2022 U.S. Dist. LEXIS 139134, at *25, 30-31 (S.D.N.Y. 2022) (granting motion to dismiss disability discrimination claims where plaintiff failed to allege that decision-maker was aware of her disability); *see also Reid v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY), Inc.*, 2025 U.S. Dist. LEXIS 171659, at *27-28 (E.D.N.Y. 2025) (same; finding allegation that plaintiff was terminated within a week of disclosing her disability to be insufficient and explaining that it was implausible that defendant terminated plaintiff because of her disability where plaintiff failed to allege that defendant knew of her disability); *Pacenza v. IBM Corp.*, 2009 U.S. Dist. LEXIS 29778, *28-29 (S.D.N.Y. 2009) ("Pacenza has not established a *prima facie* case of disability discrimination here, because . . . he has not demonstrated that his employer -- specifically, the supervisor who decided to terminate his employment -- was aware of his alleged PTSD disability.") (citing *Woolley v. Broadview Networks, Inc.,* 2003 U.S. Dist. LEXIS 2716, at *8 (S.D.N.Y. 2003) (finding that a plaintiff was not discharged because of his disability where his employer did not know about the plaintiff's insomnia when it made an employment decision about the plaintiff)).

Accordingly, Plaintiff's Second and Seventh Causes of Action must be dismissed.

---

[4] Plaintiff's allegation that Taylor knew about his disabilities when she hired him is irrelevant because Plaintiff does not allege that she decided to terminate him. Moreover, it defies logic to suggest that Taylor, who was aware of Plaintiff's disabilities when she hired him, terminated him based on his disabilities.

### B. The AC Fails to State a Disability Discrimination Claim Under the NYSHRL And/Or the NYCHRL

Unlike the ADA and RA, it is not necessary to allege that an impairment *substantially* limits a major life activity to satisfy the pleading requirements for a disability under the NYSHRL and NYCHRL. *See Puranik*, 2025 U.S. Dist. LEXIS 171797, at *37-38. The impairment need only be demonstrable. *Id.* In addition, under the NYCHRL, a plaintiff need only allege that he was treated "less well" because of his disability, not that he suffered an adverse employment action because of his disability. *Dixon v. City of New York*, 2025 U.S. Dist. LEXIS 3297, at *31-32 (S.D.N.Y. 2025).

Significantly, Plaintiff does not allege that he was treated worse than any similarly-situated nondisabled person, or a similarly-situated person with a physical disability. As explained above, the AC does not plausibly allege that Ms. Miller was similarly-situated. Thus, even under the NYSHRL and NYCHRL's more lenient standards, the AC still fails to plausibly allege disability discrimination. As explained above, Plaintiff fails to allege any facts giving rise to an inference of discriminatory intent. *See supra* at pp. 18-24; *see also Crawford v. Bronx Cmty. Coll.*, 2024 U.S. Dist. LEXIS 12068, at *33-35 (S.D.N.Y. 2024) (granting motion to dismiss NYSHRL and NYCHRL disability discrimination claims and noting, "[i]t is not sufficient merely to plead – as Plaintiff does – that she suffered a[n injury]; took leave to recover from the injury; and then was terminated.").

Moreover, where, as here, the AC fails to plausibly allege a disability discrimination claim under the NYSHRL and NYCHRL against NYCHA, the individual Defendants cannot be held liable. *See id.* at *35 (dismissing NYSHRL and NYCHRL disability discrimination claims against individual defendants because there was no primary violation by their employer) (citing *Ross v. State of New York*, 2016 U.S. Dist. LEXIS 18517, *9 (S.D.N.Y. 2016)).

Accordingly, Plaintiff's Eleventh and Sixteenth Causes of Action must be dismissed.

**POINT IV**

**THERE IS NO PLAUSIBLE RETALIATION CLAIM**

Plaintiff alleges that Defendants retaliated against him in violation of the ADA, the RA, the NYSHRL, and the NYCHRL. (ECF Doc. 38 at ¶¶ 228-240, 269-274, 309-312). Courts analyze retaliation claims under the ADA, RA, NYSHRL, and NYCHRL pursuant to the *McDonnell Douglas* framework described above. *Atherley v. N.Y.C. Dept. of Educ.*, 2024 U.S. Dist. LEXIS 58227, *30 (S.D.N.Y. 2024).

To state a *prima facie* case of retaliation under the ADA and RA, Plaintiff must plausibly allege that: (1) he engaged in protected activity; (2) the alleged retaliator knew that plaintiff engaged in protected activity; (3) he suffered an adverse decision or action; and (4) there is a causal nexus between the protected activity and the adverse action. *Atherley*, 2024 U.S. Dist. LEXIS 58227, at *30.

The standard under the NYSHRL and NYCHRL is more lenient in that a plaintiff need not allege that he suffered a materially adverse employment action. *Dixon v. City of New York*, 2025 U.S. Dist. LEXIS 3297, *34 (S.D.N.Y. 2025). Instead, he need only allege that he opposed discrimination and, "as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id.* (quoting *Livingston v. City of New York*, 563 F. Supp. 3d 201, 246 (S.D.N.Y. 2021)). However, even under the NYSHRL and NYCHRL's more

lenient standard, a plaintiff must still allege "that there was a causal connection between [the plaintiff's] protected activity and the employer's subsequent action." *Id.* (quoting *Mercado v. Mount Sinai Beth Israel*, 2023 U.S. Dist. LEXIS 163522, *16 (S.D.N.Y. 2023)); *accord Balchan v. New York City Hous. Auth.*, 2025 U.S. Dist. LEXIS 32836, *35 (S.D.N.Y. 2025). As explained below, Plaintiff failed to do so here.

A causal connection can be shown either indirectly, by pleading circumstantial evidence, or directly, by pleading "retaliatory animus directed against the plaintiff." *C.C. v. Google, LLC*, 2025 U.S. Dist. LEXIS 13448, *24-25 (S.D.N.Y. 2025) (quoting *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015)). Plaintiff has not alleged either type of causal connection here.

**A. Plaintiff Fails to Plausibly Allege that He Was Denied Pay And Benefits Because He Engaged in Protected Activity**

Plaintiff alleges that he emailed Human Resources and Defendants Murillo and Luciano to request an accommodation on September 8, 2022, and, in response, he was sent home four days later and denied pay and benefits from September 12, 2022 to October 16, 2022. (ECF No. 38 at ¶¶ 54, 58, 68, 73, 229-230). Plaintiff's claim that he was sent home on September 12, 2022 and denied pay and benefits between then and October 16, 2022 for retaliatory reasons is based solely on the fact that he requested an accommodation four days before being sent home. However, "[s]imply pleading that an adverse employment action occurred later in time than plaintiff's protected activity is insufficient to survive a motion to dismiss." *Dechberry*, 124 F. Supp. 3d at 154. *See also Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119 (S.D.N.Y. 2012) (granting motion to dismiss where plaintiff did not allege any specific facts that could give rise to a plausible inference that defendant's motive was retaliatory, and only suggesting that the court should infer retaliatory motive because defendant's adverse action occurred later in time than his EEOC complaint).

Plaintiff could not and would not perform the essential functions of his Field Coordinator position and did not report to work until he started a new position on October 17, 2022. (Iannucci Aff. at Exhibit "A"). Plaintiff experienced a lapse in pay and benefits between September 13, 2022 and October 16, 2022 not because he requested a reasonable accommodation but because he refused to report to work and had exhausted his paid leave accruals. Plaintiff does not allege that other employees who refused to report to work continued to receive pay and benefits after exhausting their leave accruals.

Under the circumstances, there is no plausible inference that Plaintiff was denied pay and benefits because he requested a reasonable accommodation. This is particularly true given that another Field Coordinator requested an accommodation for her disability at or around the same time and was not sent home without pay and benefits. If Plaintiff's request for an accommodation was the reason he did not receive compensation and benefits, then the other Field Coordinator who requested a reasonable accommodation around the same time would have been denied compensation and benefits, but she was not.

Accordingly, to the extent that Plaintiff's retaliation claims are based on Plaintiff's lapse in pay and benefits after requesting an accommodation, such claims must be dismissed.

Furthermore, requesting a reasonable accommodation may be protected activity under the ADA, RA, and NYCHRL, but it is not protected activity under the NYSHRL. *Puranik*, 2025 U.S. Dist. LEXIS 171797, at *43 (collecting cases). Thus, even if Plaintiff had sufficiently alleged a causal nexus between his request for a reasonable accommodation and the lapse in pay and benefits, dismissal of his NYSHRL retaliation claim would still be warranted because he did not allege that he engaged in protected activity.

**B. Plaintiff Fails to Plausibly Allege that He Was Constructively Demoted Because He Engaged in Protected Activity**

Plaintiff alleges that he was reassigned to PHTO in retaliation for requesting an accommodation and that his reassignment constituted a constructive demotion. (ECF No. 38 at ¶¶ 129, 140, 192, 232, 290, 311). Where, as here, Plaintiff requested to be reassigned to the position in question, and NYCHA simply granted his request, the reassignment cannot be considered retaliatory. To hold otherwise would encourage employees to bring retaliation claims against their employers for granting their requests for a reasonable accommodation. Giving Plaintiff the position that he requested after he engaged in protected activity actually weakens any inference of retaliation. *See Stickler v. IBM, Inc.*, 2024 U.S. Dist. LEXIS 154797, at *11 (S.D.N.Y. 2024).

Accordingly, to the extent that Plaintiff's retaliation claims are based on his reassignment to PHTO, such claims must be dismissed.

**C. Plaintiff Fails to Plausibly Allege that He Was Denied Training and Equipment Because He Engaged in Protected Activity**

Plaintiff alleges that he was denied necessary training and equipment in retaliation for requesting an accommodation. (ECF No. 38 at ¶¶ 158, 159, 169, 174, 224, 232, 235, 271, 290, 311). While Plaintiff claims that Defendants Gibbs, and Ramseur-Deliotte denied him necessary training and equipment, he does not allege that they knew that he requested an accommodation. *See id.* He merely alleges that they must have known about his request for an accommodation because HR "is tasked with notifying supervisors of any work restrictions or accommodations." *Id.* at ¶ 130. He does not allege that HR did, in fact, notify them of his accommodation request or work restrictions. There would have been no reason for HR to notify them of Plaintiff's inability to work and drive at night because his new position did not entail working or driving at night.

Absent an allegation that Defendants Gibbs, and Ramseur-Deliotte knew that Plaintiff requested an accommodation, this Court cannot reasonably infer that they denied him training and

equipment because he requested an accommodation. *See Duff v. Pristine Services, Inc.*, 2021 WL 66391, at *9 (S.D.N.Y. 2021) (dismissing retaliation claim where complaint failed to allege that decision-maker was aware of protected activity); *Johnson v. New York Presbyterian Hosp.*, 2001 WL 829868, at *15-16 (S.D.N.Y. 2001) (granting motion to dismiss where plaintiff failed to adequately allege that actual decision-makers were aware of the protected activity), *aff'd*, 55 F. App'x 25 (2d Cir. 2003); *Tiu-Malabanan v. Univ. of Rochester*, 2008 WL 788637, *15-19 (W.D.N.Y. 2008) (dismissing retaliation claims; while complaint alleged that plaintiff complained to the "appropriate management official," it failed to allege when the complaint was made and whether the decision-maker was actually aware of the complaint); *Schulz v. Commack Union Free Sch. Dist.*, 2023 WL 2667050, at *8 (E.D.N.Y. 2023) (granting 12(b)(6) motion for failure to adequately allege that decision-makers knew of protected activity).

While Plaintiff alleges that Taylor knew that he had requested a reasonable accommodation, and was aware of "some of his mental health / ocular disabilities," he does not allege what, specifically, Taylor knew about his alleged disabilities and request. (ECF Doc. 38 at ¶ 126). Absent such allegations, there can be no reasonable inference that Taylor denied Plaintiff training and/or equipment because of his request for an accommodation. Indeed, Plaintiff further alleges that Taylor was "unaware" of Plaintiff's lack of training, and pledged to address the issue. (*Id.* at 155). If Taylor denied Plaintiff training and equipment because he engaged in protected activity, then she would not have pledged to remedy the issue. The Supreme Court has held when assessing whether a claim is plausible a court should draw upon judicial experience and common sense. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Accordingly, to the extent that Plaintiff's retaliation claims are based on being denied training and equipment, such claims must be dismissed.

**D. Plaintiff Fails to Plausibly Allege that His Email Account Was Disabled Because He Engaged in Protected Activity**

Plaintiff alleges that he began experiencing issues accessing his work email account in early December 2022. (ECF No. 38 at ¶¶ 149, 167). He further alleges that his NYCHA email account was "intermittently disabled for nearly a month following his formal discrimination and retaliation complaint to" NYCHA's Department of Equal Opportunity ("DEO")." *Id.* at ¶ 167. Plaintiff's allegation that his email was disabled in retaliation for complaining about discrimination and retaliation is based solely on the fact that he began experiencing email issues one month after he complained to DEO. This is not enough. *See supra* at pp. 27, 30.

Plaintiff does not allege who disabled his NYCHA email account. Nor does he allege that whoever did so was aware of the discrimination / retaliation complaint that he allegedly made to DEO. Given Plaintiff's failure to allege that whoever disabled his email account knew that he complained to DEO about discrimination and retaliation (or engaged in any other protected activity), one cannot reasonably infer that that person decided to disabled Plaintiff's email because of his DEO complaint. *See supra* at pp. 27, 30.

Accordingly, to the extent that Plaintiff's retaliation claims are based on the disabling of his email account, such claims must be dismissed. Moreover, because Plaintiff does not allege that the disabling of his email account was more disruptive than a mere inconvenience, it was not an "adverse employment action" under the ADA and RA. *See Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) ("To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities."); *see also Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) ("An adverse

employment action is a 'materially adverse *change* in the terms and conditions of employment.'") (emphasis in original). Therefore, at a minimum, Plaintiff's ADA and RA retaliation claims based on such action must be dismissed.

**E. Plaintiff Fails to Plausibly Allege that He Was Reassigned to Various Worksites Because He Engaged in Protected Activity**

Plaintiff alleges that he was reassigned to various worksites for retaliatory reasons in October and November of 2022. (ECF No. 38 at ¶¶ 131). Plaintiff's allegation that his reassignment to different worksites was retaliatory is presumably based on the fact that such reassignments occurred after he requested an accommodation. This is not enough. *See supra* at p. 27.

Moreover, Plaintiff does not allege that anyone who decided to reassign him to a different worksite knew that he requested an accommodation. Absent such an allegation, one cannot reasonably infer that that person decided to reassign him because of his request for an accommodation. *See Duff*, 2021 WL 66391 at *9; *Johnson*, 2001 WL 829868 at *15-16, *aff'd*, 55 F. App'x 25 (2d Cir. 2003).

Accordingly, to the extent that Plaintiff's retaliation claims are based on his reassignment to various worksites, such claims must be dismissed. Moreover, because Plaintiff does not allege that his reassignment to different worksites was more disruptive than a mere inconvenience, such reassignments were not "adverse employment action" under the ADA and RA. *See Sanders*, 361 F.3d at 755; *Mathirampuzha* 548 F.3d at 78. Therefore, at a minimum, Plaintiff's ADA and RA retaliation claims based on such reassignments must be dismissed.

**F. Plaintiff Fails to Plausibly Allege that He Received a Counseling Memorandum on December 21, 2022 Because He Engaged in Protected Activity**

Plaintiff alleges that Defendants Gibbs and Taylor issued him a counseling memorandum on December 21, 2022 citing alleged lateness and absences. (ECF No. 38 at ¶¶ 161-162).

Although Plaintiff does not dispute the lateness and absences, he nevertheless claims that Defendants Gibbs and Taylor issued the counseling memorandum in retaliation for complaining to DEO and expressing his intent to file an EEOC charge. *See id.*

Significantly, however, Plaintiff does not allege that he provided DEO with any specific facts to support his claims that he had been subjected to a hostile work environment, discrimination and retaliation by Defendants Murillo, Luciano, Taylor, Gibbs and Ramseur-Deliotte. (*See id.* at ¶¶ 146-148). "[P]laintiff's 'generalized' complaints were not protected activity where [NYCHA] 'could not reasonably have understood that [Plaintiff] was complaining of. . . .'" unlawful conduct. *See Salhuddin v. New York City Dept. of Educ.*, 2017 U.S. Dist. LEXIS 138065, at *9-10 (S.D.N.Y. 2017) (granting motion to dismiss retaliation claim where plaintiff's allegation that she complained of race based issues was conclusory and did not sufficiently allege protected activity).

Plaintiff's claim that the December 21st counseling memorandum was retaliatory is yet again apparently based solely on the fact that he received it after complaining to DEO and expressing his intent to file an EEOC charge, which is insufficient.

Plaintiff does not allege that Gibbs and Taylor knew that he complained to DEO and/or expressed his intent to file an EEOC charge when they issued the December 21st counseling memorandum. Absent such an allegation, there is no plausible inference that Plaintiff received the December 21st counseling memorandum because he complained to DEO and/or expressed his intent to file an EEOC charge. *See Duff*, 2021 WL 66391, at *9.

Moreover, the December 21st counseling memorandum cited attendance issues following negative performance evaluations in February 2022 and May 2022, a counseling memorandum in September 2022 and a November 28, 2022 write-up concerning Plaintiff's tardiness. (Iannucci

Aff., Exhibit "C" at ¶¶ 37, 46, 83).[5] Where, as here, Plaintiff began experiencing gradual adverse job actions well before he complained to DEO and expressed his intent to file an EEOC charge, there is no plausible inference that the December 21st counseling memorandum was retaliatory. *See Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 95 (2d Cir. 2001), as amended (June 6, 2001) (holding that because "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise"); *see also Burgess v. New Sch. Univ*., 2024 U.S. Dist. LEXIS 163306, at *28 (S.D.N.Y. 2024) (granting motion to dismiss retaliation claim and noting that, "[w]here progressive discipline began before a protected activity, there is no reasonable inference that the continuation of that activity after the protected activity was caused at all by the protected activity"); *Forrest v. N.Y.C. Hous. Auth.*, 2023 U.S. Dist. LEXIS 76626, at *9 (S.D.N.Y. 2023) (recognizing that "[a]lthough Slattery was decided on a summary judgment motion, courts routinely apply the Second Circuit's holding regarding causation in Slattery on motions to dismiss.") (collecting cases).

Accordingly, to the extent that Plaintiff's retaliation claims are based on Gibbs and Taylor's issuance of the December 21, 2022 counseling memorandum, such claims must be dismissed. Moreover, as discussed above, a counseling memorandum is not considered an "adverse employment action" under the ADA and RA, so, at a minimum, Plaintiff's ADA and RA retaliation claims based on the counseling memorandum must be dismissed. *See supra* at p. 19.

---

[5] The Original Complaint alleged that Plaintiff received the following during his probationary period: unsatisfactory evaluations on February 17, 2022, May 17, 2022 and January 3, 2023, a write-up on November 28, 2022 and counseling memoranda on September 12, 2022 and December 21, 2022. (Iannucci Aff. at Exhibit "C" at ¶¶ 37, 46, 83, 223, 247, 255-258). Instead of including such allegations in the AC, Plaintiff now alleges that he "performed competently, met NYCHA's actual expectations, and had little to no legitimate disciplinary history of merit." (ECF Doc. 38 at ¶ 101). As explained above, where an amended pleading directly contradicts the original pleading, the Court may disregard the allegations in the amended pleading and accept the allegations in the original pleading as true. See *supra* at p. 12.

### G. Plaintiff Fails to Plausibly Allege that He Received a Negative Performance Evaluation on January 3, 2023 Because He Engaged in Protected Activity

Plaintiff alleges that Gibbs gave him a negative performance evaluation on January 3, 2023 in response to his protected activities and complaints of discrimination and retaliation. (ECF No. 38 at ¶¶ 168, 170). Plaintiff received the lowest or near-lowest possible ratings in each category, including leadership, planning and organization, and judgment, culminating in an unsatisfactory rating. (*Id.* at ¶¶ 169-170).

Plaintiff's claim that the January 3rd performance evaluation was retaliatory is apparently based solely on the fact that he received it after allegedly complaining about discrimination and retaliation to DEO and expressing his intent to file an EEOC charge. As discussed above, this is not enough to survive a motion to dismiss.

Plaintiff does not allege that Gibbs knew that he allegedly complained to DEO and/or expressed his intent to file an EEOC charge when she issued the January 3rd evaluation. Absent such an allegation, there is no plausible inference that Plaintiff received the January 3rd evaluation because he complained to DEO and/or expressed his intent to file an EEOC charge. *See Duff*, 2021 WL 66391, at *9.

Moreover, the January 3rd evaluation cited various issues with Plaintiff's performance following negative performance evaluations in February 2022 and May 2022, a counseling memorandum in September 2022, a November 28, 2022 write-up concerning Plaintiff's tardiness and a December 21, 2022 counseling memorandum regarding Plaintiff's attendance. (Iannucci Aff., Exhibit "C" at ¶¶ 37, 46, 83, 247). As discussed above, where, as here, Plaintiff began experiencing gradual adverse job actions well before he complained to DEO and expressed his intent to file an EEOC charge, there is no plausible inference that the January 3rd evaluation was retaliatory. *See Slattery*, 248 F.3d at 95, *as amended* (June 6, 2001).

Accordingly, to the extent that Plaintiff's retaliation claims are based on the January 3, 2023 performance evaluation, such claims must be dismissed. Moreover, because Plaintiff does not allege that the January 3rd performance evaluation altered his compensation, benefits or job title, it was not an "adverse employment action" under the ADA and RA. *See Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (citing *Fairbrother v. Morrison*, 412 F.3d 39, 6-57 (2d Cir. 2005) (holding that a negative performance evaluation cannot be considered an adverse employment action without evidence that it "altered . . . compensation, benefits, or job title.")). Therefore, at a minimum, Plaintiff's ADA and RA retaliation claims based on that evaluation must be dismissed.

### H. Plaintiff Fails to Plausibly Allege that He Was Terminated Because He Engaged in Protected Activity

Plaintiff alleges that he was terminated on February 3, 2023 in retaliation for filing an EEOC charge on January 19, 2023. (ECF Doc. 38 at ¶¶ 178, 236). Yet again, this claim is based solely on timing, which is insufficient. *Dechberry*, 124 F. Supp. 3d at 154.

Although Plaintiff alleges that Donohue was the "final decision-maker" who decided to terminate him, he does not allege that she knew that he filed an EEOC charge when she decided to terminate him. (ECF Doc. 38 at ¶ 183). Absent an allegation that Donohue actually knew about Plaintiff's EEOC charge on February 3, 2025, it is not plausible that Plaintiff was terminated in retaliation for filing an EEOC charge. *See Duff*, 2021 WL 66391 at *9.

Moreover, Plaintiff's termination occurred after he received three negative evaluations, two counseling memoranda, and one write-up during his probationary period based on myriad performance deficiencies and attendance issues. (Iannucci Aff., Exhibit "C" at ¶¶ 37, 46, 83, 247, 255, 258-259, 282-283). Where, as here, Plaintiff began experiencing gradual adverse job actions

well before he filed an EEOC charge and was on probation, there is no plausible inference that his termination was retaliatory. *See Slattery*, 248 F.3d at 95.

Plaintiff alleges that Defendants' reasons for terminating his employment were pretextual because Defendants deviated from standard procedure. (*See* ECF Doc. 38 at ¶¶ 185-190). More specifically, Plaintiff alleges that NYCHA's HR Manual required Gibbs to submit a full termination memorandum with supporting documentation to Taylor for approval and consult with Edmonson before initiating the termination proceedings. (*Id.* at 186-187). However, Plaintiff does not allege that Gibbs failed to fulfill these alleged procedural requirements. There is, therefore, no basis to conclude that Defendants failed to follow procedure in terminating Plaintiff's employment. Moreover, even if Plaintiff had sufficiently alleged that Defendants failed to follow procedure in terminating his employment, that would not support a finding of pretext where, as here, there is no allegation that such procedures were followed when terminating those who had not engaged in protected activity.

Accordingly, to the extent that Plaintiff's retaliation claims are based on his termination, such claims must be dismissed.

**I. Plaintiff Fails to Plausibly Allege that He Was "Blacklisted" Because He Engaged in Protected Activity**

Plaintiff generally alleges that prospective employers did not hire him after sending him conditional offers of employment because NYCHA "blacklisted" him. (ECF Doc. 38 at ¶¶ 6, 199-203). There are no facts pled as to who "blacklisted" Plaintiff, how he was blacklisted, or when he was blacklisted. In any event, Plaintiff only alleges that he accepted one conditional offer. (*See id.* at ¶¶ 199-203). With the exception of the one offer that he accepted, the facts as alleged support the conclusion that Plaintiff was not hired for those jobs because he did not accept the conditional

offers. Plaintiff does not allege any facts suggesting that NYCHA was responsible for him not being hired for those positions.

With respect to the one conditional offer that Plaintiff did accept, he alleges that he chose not to complete the in-person hiring process because he had already started a new job. (*See id.* at ¶¶ 382-385). There is simply no inference that NYCHA did anything to prevent Plaintiff from being hired for that position.

Therefore, to the extent that Plaintiff's retaliation claims are based on NYCHA allegedly "blacklisting" him, such claims must be dismissed. *See*, *e.g.*, *Hollington v. CDM Fed. Programs Corp.*, 2023 U.S. Dist. LEXIS 40887, at *27-28 (S.D.N.Y. 2023) (granting motion to dismiss retaliation claim based on defendant's alleged blackballing of plaintiff where plaintiff merely provided a conclusory allegation that defendant falsely disparaged him in the industry and did not allege any facts concerning how, or to whom, defendant was disparaging him in the industry); *Walker v. City of New York*, 2013 U.S. Dist. LEXIS 35816, at *11 (E.D.N.Y. 2013) (granting motion to dismiss retaliation claim where plaintiff did not claim that defendants' alleged efforts to prevent her from obtaining employment in armed security contributed to any potential employer's decision not to hire her); *Memnon v. Clifford Chance US, LLP*, 667 F. Supp. 2d 334, 343 (S.D.N.Y. 2009) (rejecting blackballing claim because plaintiff had not provided any evidence of communication between her previous and prospective employers); *Harrison v. North Shore Univ. Hosp.*, 2008 U.S. Dist. LEXIS 17330, at *37-38 (E.D.N.Y. 2008) (rejecting plaintiff's claim that former employer retaliated against him by blacklisting him to future employers where there was no evidence that plaintiff's former employer made any statements that caused or contributed to any prospective employer's decision not to hire plaintiff). Accordingly, Plaintiff's Third, Eighth, Twelfth and Seventeenth Causes of Action must be dismissed.

## POINT V

## THERE IS NO PLAUSIBLE HOSTILE WORK ENVIRONMENT CLAIM

Plaintiff contends that he was subjected to a hostile environment because of his disability. Hostile work environment claims under the ADA "are evaluated under the same standard as hostile work environment claims under Title VII," *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008). A plaintiff must plead that "the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment." *Murtha v. N.Y. State Gaming Comm'n,* 2019 U.S. Dist. LEXIS 159783, at *35 (S.D.N.Y. 2019) (internal citations and quotations omitted).

To state a claim for hostile work environment under the NYSHRL, a plaintiff must plead that he was subjected to inferior terms, conditions or privileges of employment because of the individual's protected characteristics." *Bell v. N.Y.C. Dep't of Educ.*, 2025 U.S. Dist. LEXIS 146518, at *48 (S.D.N.Y. 2025). Under the NYCHRL, a plaintiff must show that they were treated less well because of a protected characteristic. A plaintiff cannot, however, state a claim for a hostile work environment if the alleged disparate treatment amounts to nothing more than a petty slight or inconvenience. *See Wilson v. N.Y.P. Holdings, Inc.*, No. 05-CV-10355, 2009 U.S. Dist. LEXIS 28876, at *89 (S.D.N.Y. 2009) (dismissing hostile work environment claim under the NYCHRL because although the conduct alleged was offensive, "no reasonable fact finder could conclude that the alleged conduct amounts to more than such petty slights and inconveniences"), *aff'd sub nom*. *Watson v. N.Y. Pressman's Union No. 2*, 444 F. App'x 500 (2d Cir. 2011).

To the extent that Plaintiff is alleging that a hostile environment is based on the failure to accommodate, it fails as a matter of law. *See Miller v. Buffalo Public Schools*, 2021 U.S. Dist. LEXIS 213940, at *12 (N.D.N.Y. 2021) (while plaintiff argues that the District "engaged in a program of failing to accommodate [her]" . . . , "a defendant's failure to provide a reasonable

accommodation does not in itself constitute evidence of a parallel claim for . . . hostile work environment") (quoting *Murtha v. New York State Gaming Commission,* 2019 U.S. Dist. LEXIS 159783, at *13 (S.D.N.Y. 2019)); *Greenbaum v. New York City Transit Authority,* 2021 U.S. Dist. LEXIS 119024, 2021 WL 2650509, at *11 (S.D.N.Y. 2021) ("Greenbaum argues that the Defendants created a hostile work environment when they failed to provide him with the ergonomic keyboard that he requested. If this failure had existed, it might constitute a failure to accommodate a disability; it would not constitute a hostile work environment"); *Barton v. Warren County,* 2020 U.S. Dist. LEXIS 141128, 2020 WL 4569465, at *10 (N.D.N.Y. 2020) ("to the extent that Plaintiff . . . relies on the rejection of reasonable accommodations to plausibly suggest a hostile work environment . . . she misconstrues the law").

To the extent Plaintiff claims other acts he deems "hostile," such as poor evaluations, assignments, micromanagement, termination of health insurance coverage, disabling of email, insufficient training/equipment, support his claim, he fails to tie any acts to his disability. In this regard, despite all the verbiage in the Complaint, it appears that Plaintiff's hostile work environment claim is predicated on personal animus as opposed to his disability. Indeed, Plaintiff's request for an accommodation was granted, which belies any plausible inference that the Defendants discriminated against him.

Personal dislike cannot form the basis of a claim under the anti-discrimination laws unless it is based on a protected characteristic. There are no facts in the Complaint that make such a claim plausible. *See Bautista v. PR Gramercy Square Condominium*, 642 F. Supp. 3d 411, 427 (S.D.N.Y. 2022) (dismissing claim, "Because of this, Bautista fails to properly connect his experiences at work to his protected characteristics."); *Mercado v. Mount Sinai Beth Isr.,* 2023 U.S. Dist. LEXIS 163522, at *37 (S.D.N.Y. 2023) ("Taken in the light most favorable to Plaintiff, the evidence at

most indicates that Natal or others at MSBI had a personal animus against Plaintiff. But such personal animus, not based on Plaintiff's protected status, fails to make out a hostile work environment claim"); *Zabar v. New York City Dep't of Educ.*, 2020 WL 2423450, at *6 (S.D.N.Y. 2020) (dismissing ADA hostile work environment claim and noting, "[t]he absence of factual allegations providing a causal nexus between Plaintiff's disability and the alleged adverse actions is fatal to Plaintiff's hostile work environment claim"); *Santana v. Mount Vernon City Sch. Dist.*, 2023 U.S. Dist. LEXIS 57090, at **43-44 (S.D.N.Y. 2023) (dismissing hostile environment claim where negative reviews and other conduct contributing to an abusive environment were not based on plaintiffs' disabilities); *Llanos v. City of New York*, 129 A.D.3d 620 (1st Dep't 2015) ("plaintiff's failure to adequately plead discriminatory animus is fatal to her claim of hostile environment"); *Chin v. New York City Housing Department*, 106 A.D.3d 443, 445 (1st Dep't 2013) (dismissing hostile work environment claim where alleged treatment was not because of plaintiff's protected status).

Likewise, because Plaintiff has not plausibly alleged that any alleged differential treatment was because of his disability, even under the NYCHRL's liberal standard, the AC fails to state a hostile work environment claim. *See Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016) (dismissing NYCHRL hostile work environment claim partially because plaintiff "offer[ed] nothing but bare speculation to link [any] behavior to any discriminatory ... motive or intent").

Accordingly, the Fifth, Ninth, Thirteenth and Nineteenth Causes of Action must be dismissed.

## POINT VI

## THERE IS NO PLAUSIBLE INTERFERENCE CLAIM

The AC alleges interference claims under the ADA and the NYCHRL. "Neither the Supreme Court nor the Second Circuit has yet outlined a test for an interference claim under the

ADA." *EEOC v. Day & Zimmermann NPS, Inc.*, 265 F. Supp. 3d 179, 204 (D. Conn. 2017). "[C]ase law interpreting § 503(b) is sparse, but the plain words of the statute, however, preclude a party from intimidating or coercing another party not to exercise his rights under the ADA, as well as barring interference against a person who has exercised his rights under the ADA." *Id.*

As discussed above, Plaintiff's request for an accommodation (transfer to a new position) was granted. There are no facts pled in the AC that Plaintiff was in any way denied the ability to take leave, denied his request for an alternative position, or otherwise prevented from asserting his rights under the ADA. Consequently, Plaintiff's interference claims fail as a matter of law. *See Colleta v. Northwell Health*, 2019 U.S. Dist. LEXIS 141338, at *19 (E.D.N.Y. 2019) (dismissing interference claim), adopted by 2019 U.S. Dist. LEXIS 180737 (E.D.N.Y. 2019); *see also Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 252 (5th Cir. 2025) (employer's participation in the interactive process to accommodate plaintiff cannot be considered "interference").

Accordingly, the Fourth and Eighteenth Causes of Action must be dismissed.

## POINT VII

## THERE IS NO PLAUSIBLE AIDING AND ABETTING CLAIM

Plaintiff alleges, in conclusory fashion, that the individual Defendants aided and abetted unlawful discrimination and retaliation in violation of the NYSHRL and NYCHRL. (ECF Doc. 38 at ¶¶ 297-299, 322-325). The AC does not identify which individual Defendants allegedly aided and abetted unlawful conduct or specify how they allegedly did so. As explained below, the AC fails to sufficiently allege that any individual Defendants aided and abetted unlawful discrimination and retaliation in violation of the NYSHRL and/or NYCHRL.

### A. The AC Fails to State an Aiding and Abetting Claim Under the NYSHRL And/Or the NYCHRL

"'[A] precondition to a valid aiding and abetting claim under the NYSHRL or NYCHRL is a demonstration of a valid primary claim for discrimination or retaliation' against the . . . employer." *Samuels v. Urb. Assembly Charter Sch. For Comput. Sci.*, 2024 U.S. Dist. LEXIS 157139, at *31 (S.D.N.Y. 2024) (quoting *Sanchez v. L'Oreal USA, Inc.*, 2022 U.S. Dist. LEXIS 88733, at *5 (S.D.N.Y. 2022). As explained above, the Complaint fails to sufficiently allege that NYCHA discriminated and/or retaliated against Plaintiff in violation of the NYSHRL and/or NYCHRL. Therefore, Plaintiff's aiding and abetting claim against the individual Defendants must be dismissed. *See Murray v. United Parcels Serv., Inc.*, 2022 WL 4468295, at *22 (E.D.N.Y. 2022) (dismissing aiding and abetting claim where plaintiff did not demonstrate a valid primary claim for discrimination or retaliation); *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 338 (S.D.N.Y. 2020) (where plaintiff "does not state a claim for . . . discrimination or hostile work environment on the part of . . . defendant, there is no predicate for aiding and abetting liability with respect to these claims"); *Stinnett v. Delta Air Lines, Inc.*, 2019 WL 1493224, at *9 (E.D.N.Y. 2019) (dismissing aiding and abetting claims under the NYSHRL and NYCHRL because the court dismissed the plaintiff's "primary discrimination claims" under those statutes), *aff'd*, 803 F. App'x 505 (2d Cir. 2020).

### B. Plaintiff's Aiding and Abetting Claims Must Also Be Dismissed Because Plaintiffs' Discrimination and Retaliation Claims Are Based on The Individual Defendants' Own Conduct

"Under the NYCHRL and NYSHRL 'an individual may not be held liable merely for aiding and abetting his own discriminatory conduct but only for assisting another party in violating' those laws." *Charles v. City of New York*, 2023 WL 2752123, at *11 (S.D.N.Y. 2023) (quoting *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012); *see also Singhal v. Doughnut Plant, Inc.*, 2022 WL 976885, at *5 (S.D.N.Y. 2022).

Here, Plaintiff alleges, in conclusory fashion, that each of the individual Defendants discriminated / retaliated against and/or harassed him. Plaintiff does not allege that any of the individual Defendants assisted others in violating the NYSHRL and/or NYCHRL. *See id.* Because the individual Defendants cannot aid and abet their own actions, Plaintiff's aiding and abetting claims against them under the NYSHRL and NYCHRL must be dismissed. *See Charles*, *supra* (dismissing aiding and abetting claims against individual defendant where plaintiff only accused that defendant of discriminating against him and did not allege that the defendant was aiding and abetting anyone else's discriminatory acts); *Gomez v. Cablevision Sys. New York City Corp.*, 2016 WL 3455935, at *24 (Sup. Ct. New York Co. 2016) (holding that an individual defendant cannot aid and abet an the employer's alleged discriminatory acts if the plaintiff is claiming that the individual defendant himself personally discriminated against the plaintiff).

Accordingly, Plaintiff's Fourteenth and Twentieth Causes of Action must be dismissed.

## POINT VIII

## THE COMPLAINT FAILS TO STATE A CLAIM FOR EMPLOYER LIABILITY UNDER THE NYCHRL

Where, as here, a complaint fails to present facts that support a plausible allegation of any unlawful discriminatory conduct, there can be no employer liability under the NYCHRL. *See*



22323779.v11-12/13/25

*LeRoy v. Delta Air Lines,* 2022 U.S. App. LEXIS 29352 (2d Cir. 2022). Accordingly, the Twenty-First Cause of Action should be dismissed.

**POINT IX**

**THE STATE AND LOCAL LAW CLAIMS SHOULD BE DISMISSED**

The Court should decline exercising supplemental jurisdiction over any alleged state or local law claim because Plaintiff has failed to state any federal causes of action. *See Ruotolo v. Fannie Mae,* 933 F. Supp. 2d 512, 527 (S.D.N.Y. 2013) (declining to exercise supplemental jurisdiction where federal law claims were dismissed before trial upon defendants' motion to dismiss).

Furthermore, all of Plaintiff's state and local law claims must be dismissed for failure to plead compliance with Section 157(1) of the Public Housing Law ("Section 157"), which provides:

> In every action or special proceeding, for any cause of action whatsoever, prosecuted or maintained against an authority, . . . the complaint . . . shall contain an allegation that at least thirty days have elapsed since the demand, claim or claims upon which such action or special proceeding is founded were presented to the authority for adjustment and that it has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment[.]"

Pub. Hous. Law § 157(1). "Compliance with the notice requirement of [Section 157] is a condition precedent to the maintenance of an action against the Housing Authority and a failure to comply with the statute requires dismissal of such an action[.]" *J.E. Indus. Of Ossining, Inc. v. Peekskill Hous. Auth.*, 128 A.D.3d 638, 639-40 (2d Dep't 2015) (emphasis added) (affirming dismissal of complaint against housing authority where plaintiff failed to comply with Section 157) (citing *Leon v. N.Y.C. Empls. Ret. Sys.*, 240 A.D.2d 186 (1st Dep't 1997)); *see also J.B. v. City of New York*, 231 A.D.3d 696, 697 (2d Dep't 2024) ("Service of a notice of claim within 90 days after

accrual of the claim is a condition precedent to commencing an action against NYCHA[.]") (quoting *Roman v. New York City Hous. Auth.*, 212 A.D.3d 816, 817 (2d Dep't 2023)).

Where, as here, Plaintiff does not allege that he satisfied Section 157's notice of claim requirement, his claims against NYCHA should be dismissed. *See*, *e.g.*, *Leon v. N.Y. City Empls. Ret. Sys.*, 240 A.D.2d 186 (1st Dep't 1997) ("dismissal [of the claims against NYCHA were] mandated because of plaintiffs failure to comply with the notice requirements of [Section 157]."). Indeed, "[t]he failure to allege the presentment of a timely notice of claim to the Housing Authority as required by [Section 157] renders a complaint legally insufficient and warrants its dismissal for failure to state a cause of action." *Dorrell v. N.Y.C. Hous. Auth.*, 2022 N.Y. Misc. LEXIS 18654, at *4-5 (Sup. Ct. Queens Cty. 2022) (dismissing *pro se* plaintiffs' claims against NYCHA for failure to allege that they filed a notice of claim); *see also Rodriguez v. New York City Hous. Auth.*, 2023 N.Y. Misc. LEXIS 14227, at *6 (Sup. Ct. New York Cty. 2023) (dismissing *pro se* plaintiff's discrimination claims against NYCHA for failure to comply with Section 157); *Citadel Estates, LLC v. New York City Hous. Auth.*, 39 Misc. 3d 880, 893 (Sup. Ct. Kings Cty. 2013) (dismissing claims against NYCHA due to "fatal defect" of failing to file a notice of claim); *Florentino v. Nokit Realty Corp.*, 2010 N.Y. Misc. LEXIS 2310, *17-19 (Sup Ct. New York Cty. 2010).

Plaintiff's failure to comply with Section 157's notice and pleading requirements also warrants dismissal of his state and local law claims against the individual Defendants. When an employer is required to indemnify its employees, service of a notice of claim upon such employees is a condition precedent to commencing an action against them. *Bardi v. Warren Cty. Sheriff's Dept.*, 194 A.D.2d 21, 23-24 (3d Dep't 1993). Thus, where, as here, NYCHA has a duty to indemnify the individual Defendants because they were acting within the scope of their employment, Plaintiff was required to serve them with a notice of claim. Plaintiff's failure to do

so is fatal to his state and local law claims against the individual Defendants. *See Grasso v. Schenectady Cty. Pub. Lib.*, 30 A.D.3d 814, 817-18 (3d Dep't 2006).

Accordingly, the Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Eighteenth, Nineteenth, Twentieth and Twenty-First Causes of Action must be dismissed.

## POINT X

## THE AC FAILS TO PLAUSIBLY STATE A CLAIM UNDER THE RA

As explained above, Plaintiff alleges that NYCHA discriminated and retaliated against him in violation of the RA. "The RA permits only the head of a government agency to be sued, but not the agency itself or its lower-level . . . employees." *Nobriga v. Dalton*, 1996 WL 294354, at *2 (E.D.N.Y. 1996). Where, as here, Plaintiff named NYCHA, rather than the head of NYCHA, as a Defendant, his RA claims must be dismissed. *See McCutcheon v. United States DOI*, 2023 U.S. Dist. LEXIS 40935, at *16 (S.D.N.Y. 2023) (dismissing RA claims against employer where plaintiff named employer, not agency head, as defendant); *Torres v. United States VA*, 2004 U.S. Dist. LEXIS 5363 (S.D.N.Y. 2004); *see also Pierre-Louis v. United States Postal Serv.*, 2025 U.S. Dist. LEXIS 149651, at *24-25 (S.D.N.Y. 2025) (dismissing RA claims against employer for lack of subject matter jurisdiction).

Accordingly, Plaintiff's Sixth, Seventh, Eighth and Ninth Causes of Action should be dismissed.

## POINT XI

## THERE IS NO BASIS FOR AWARDING PUNITIVE DAMAGES

An award of punitive damages requires actions that "amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." *Chauca v. Abraham*, 30 N.Y.3d 325, 328-29

(2017). Plaintiff has not alleged sufficient facts to support the conclusion that Defendants' conduct was in willful or reckless disregard of Plaintiff's rights. Moreover, punitive damages are not recoverable against NYCHA. *See Blazina v. Port. Auth.*, 2008 U.S. Dist. LEXIS 30605, *22 (S.D.N.Y. 2008) ("A municipality is immune from a claim of punitive damages."); *see also Ruiz v. New York City*, 2023 N.Y. Misc. LEXIS 4800, *6 (Sup. Ct. New York Cty. 2023) (citing *Seville Constr., Inc. v. New York City Hous. Auth.*, 247 A.D.2d 69 (1st Dep't 1998)).

Accordingly, Plaintiff's request for punitive damages should be dismissed. *See Valensi v. Park Ave. Operating Co.*, 169 A.D.3d 960, 962 (2d Dep't 2019) (affirming lower court's determination that punitive damages were unwarranted).

## <u>CONCLUSION</u>

For all the foregoing reasons, the Complaint should be dismissed, with prejudice.

Dated: Melville, New York
December 13, 2025

BOND, SCHOENECK & KING, PLLC

By: ______________________________
Emily E. Iannucci (EI:8908)
Howard M. Miller (HM:4538)
*Attorneys for Defendants*
68 South Service Road, Suite 400
Melville, New York 11747
Email: eiannucci@bsk.com; millerh@bsk.com
Telephone: 516-267-6314; 516-267-6318
Facsimile: 516-267-6301

**CERTIFICATE OF COMPLIANCE**

I, Emily E. Iannucci, Esq., attorney for Defendants New York City Housing Authority, Rudy Murillo, Anthony Luciano, Sylvia Aude-McCullough, Kimberly Taylor, LaToya Ramseur-Deliotte, Carolyn Gibbs, Robin Yudkovitz, Amanda Donohue, Marla Edmonson and Sharda Shrestha, do hereby certify pursuant to Local Rule 7.1(c) and the December 11, 2025 Order of the Honorable Jeannette A. Vargas granting Defendants leave to file a memorandum of law of up to 15,000 words (ECF No. 41), that the aforementioned memorandum of law was prepared using Microsoft Word processing software and that the word count function of that software, applied specifically to include all text, including headings, footnotes, and quotations, indicates that the attached memorandum contains 14,995 words in a proportionately-sized font.

Dated: December 13, 2025

/s/Emily E. Iannucci
Emily E. Iannucci